# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES W. HAGE, | **Civil Action No.:  04-CV-5933 (MLC)(TJB)** |
| *Plaintiff,* | |
| -vs.- | |
| UNUMPROVIDENT CORPORATION and THE PAUL REVERE LIFE INSURANCE COMPANY, | |
| *Defendants.* | |

## DEFENDANTS' OMNIBUS MOTION *IN LIMINE*

White and Williams LLP
The Atrium, East 80 Route 4
Paramus, New Jersey 07652
Phone: 201-368-7200
Fax: 201-368-7246
*Attorneys for defendants UnumProvident Corporation and The Paul Revere Life Insurance Company*

*On the brief:*
Andrew I. Hamelsky, Esq. (AH-6643)
Rafael Vergara (RV-4098)

PHLDMS1 4161210v.1

## PRELIMINARY STATEMENT

In that the central issue to be decided in this case is what plaintiff Charles W. Hage's ("Hage") occupation was at the time of his claimed disability, much of his proffered evidence for the upcoming trial is patently inadmissible. Specifically Hage seeks to introduce impermissible evidence concerning (1) his entitlement to future damages (2) proposed expert opinion regarding claims handling in this breach of contract case and (3) cumulative and uncontroverted evidence concerning his eye condition which precludes him from performing his OB/GYN duties. This Court has already ruled that the sole issue to be tried is whether Hage is totally disabled from performing the important duties of his "Your Occupation" as defined in the disability policy issued by The Paul Revere Life Insurance Company (Paul Revere).[1] (A copy of the policy at issue is attached as **Exhibit 1**.) The remaining non-breach of contract counts of Hage's First Amended Complaint have been and are stayed.[2] It is Paul Revere's contention that at the time of his claimed disability, Hage was performing the duties of both an OB/GYN and of a Physician Advisor. Considering that Hage continues to perform the duties of a Physician Advisor even to this day, it is Paul Revere's position that he cannot be considered totally disabled under the terms of his disability contract, particularly where the evidence shows that he spent the majority of his time, and made his entire income from, the performance of his duties as a Physician Advisor. Hage's position in this litigation is that his occupation as a Physician

---

[1] Defendant UnumProvident Corporation k/n/a Unum Group is the holding company for its wholly owned insuring subsidiary Paul Revere.

[2] The First Amended Complaint pleads four claims: breach of the disability insurance contract (Count I); violation of the New Jersey Consumer Fraud Act (Count II); common law fraud (Count III); and violations of the federal and New Jersey RICO statutes (Count IV). By Order dated October 22, 2007, the Court bifurcated the trial, severing Counts II, III and IV, and assigning the breach of contract claim alone for trial.

Advisor should be ignored as he contends that his only occupation was that of an OB/GYN (this despite his admission that he was a self-proclaimed "part-time" OB/GYN).

Since the Court has already neatly framed the issues to be tried to a finder of fact, the extraneous evidence being proffered by Hage must be excluded. Hage blithely ignores the actual issue to be tried in this proceeding, namely: What was Hage's "Your Occupation" (as defined in the policy) at the time of his claimed Total Disability? At trial, Hage will seek to proffer evidence concerning facts that are not in dispute. Hage seeks to call witnesses and admit evidence concerning the eye condition that disables him from his OB/GYN occupation. Paul Revere, during the claim and in this litigation, has never denied that Hage has an eye condition which precludes his ability to perform OG/GYN duties. As such, any evidence or testimony concerning his eye condition is irrelevant and cumulative. (*See* Letter from Dannimarie Comeau to Charles Hage, MD of 1/2/03, **Exhibit 2**; Letter from Linda J. Mason to Charles W. Hage, MD of 6/29/04, **Exhibit 3**.)

Similarly, Hage seeks to proffer evidence and testimony concerning why he cannot perform the duties of an OB/GYN. Paul Revere during the claim, and in this litigation, has acknowledged that due to his eye condition Hage should not perform the duties of an OB/GYN.

The aforementioned issues are not in dispute and do not form the basis of Hage's claim denial. Rather, the claim denial was based upon the fact that for years prior to his claimed date of disability through today, Hage has continued to perform the duties of a Physician Advisor. Since he devoted the majority of his time to being a Physician Advisor, and earned his entire income from performing Physician Advisor duties, those duties must be deemed important, and, therefore, Hage cannot be considered totally disabled under the terms of his policy.

Hage also seeks to proffer testimony from Dominick LaGravinese, his "bad faith" expert. Hage is attempting to re-package LaGravinese into an expert in claims handling and policy interpretation even though LaGravinese's experience is in insurance fraud field investigation. As set forth below, LaGravinese is not an expert in the field of claims handling or policy interpretation. Moreover, given the Order of this Court to bifurcate the trial, LaGravinese's testimony is not proper for the issues to be decided by the trier of fact in this trial.

Hage also wants the Court to entertain his novel legal theory that he is somehow entitled to future benefits by way of a lump sum payment if he prevails. Aside from a passing reference in an ad damnum clause, this novel theory is not found anywhere in his First Amended Complaint. Such a claim is not cognizable under law even if the First Amended Complaint did plead facts purporting to substantiate such a claim. The policy issued by Paul Revere pays monthly benefits for Hage's life if he is found to be totally disabled. There is no acceleration clause or methodology within the policy to provide Hage with benefits on his life expectancy. Importantly, to establish a claim for future benefits, Hage would have had to, at the very least, establish a repudiation of the contract by Paul Revere. Since Hage has not plead any facts in his complaint concerning repudiation, it is impossible for Paul Revere to defend such a claim. However, even assuming he had plead repudiation of the contract, such allegations would be legally futile since Paul Revere has not repudiated the policy. In fact, during the claims process Paul Revere attempted to evaluate Hage claim as one for residual disability, but Hage flatly refused. Further proof of the fact that the policy has not been repudiated is that Hage continues to make premium payments. Clearly, Hage cannot claim that Paul Revere repudiated the contract on one hand, and then on the other hand pay premiums to keep the policy in force.

PHLDMS1 4161210v.1

For the reasons set forth below, Paul Revere seeks an Order from this Court barring Hage from proffering evidence and testimony that is wholly irrelevant, unduly prejudicial, unsubstantiated, and misleading.

## STATEMENT OF FACTS

### A.     Paul Revere Disability Policy 0102301837

On June 25, 1987 Paul Revere issued disability policy 0102301837 to Hage.  In this action, Hage only seeks Total Disability benefits as a result of an eye injury which he claims disabled him on August 8, 2002.

Part 1.9 of the policy defines "Total Disability" as follows:

> "Total Disability" means that because of Injury of Sickness:
>
>   a. You are unable to perform the important duties of Your Occupation; and
>
>    b.  You are under the regular and personal care of a Physician

(See Policy, at Part 1.9, **Exhibit 1**.)  Part 1.8 defines "Your Occupation" as "the occupation in which You are regularly engaged *at the time You become disabled*." (Emphasis added.)  Part 2.1 of the Policy states that the Total Disability benefit is only available to Hage if he is "Totally Disabled."

Reading these provisions together, an insured is entitled to a Total Disability benefits under the Paul Revere policy when he is unable to perform the important duties of his Your Occupation, which is the occupation that he is regularly engaged in on the date of disability.  In Hage's case, the question to be decided by the Court and/or jury is whether Hage duties as a Physician Advisor are important and therefore preclude him from being totally disabled under the Policy.

It bears noting that Paul Revere attempted to administer Hage's claim under the separate "Residual Disability" benefit specified in Part 2.2 of the Policy.  Part 2.2 provides for payment of

a fractional disability benefit to one who does not qualify for a Total Disability benefit.  Part 1.10

defines "Residual Disability" as follows:

> "Residual Disability", prior to the Commencement Date, means
> that due to Injury or Sickness:
>
> a. (1) You are unable to perform one or more of the important
> duties of Your Occupation … ; or
>
> b. Your Loss of Earnings is equal to at least 20% of Your Prior
> Earnings while You are engaged in Your Occupation or another
> occupation; and
>
> c. You are under the regular and personal care of a Physician.
>
> As of the Commencement Date, Residual Disability means that
> due to the continuation of that Injury or Sickness:
>
> a. Your Loss of Earnings is equal to at least 20% of Your Prior
> Earnings while You are engaged in Your Occupation or another
> Occupation ….

For reasons that are unclear, Hage has disavowed any interest in obtaining residual

disability benefits, preferring to roll the dice on an all-or-nothing Total Disability benefit

recovery.[3]


### B.   HAGE'S EMPLOYMENT AND CLAIM

#### 1.   The Occupations That Hage Was Regularly Engaged Between 1999 and 2002.

Hage began scaling back his OB/GYN practice beginning at least five years before the

August 2002 onset of his alleged Total Disability.  In July 1997, he made a formal request to

Princeton Insurance Company (his malpractice insurer) requesting part-time malpractice

coverage.  In his Part-Time Practice Application, he stated "practice will not reach 40% of the

---

[3] In fact, during the July 29, 2005 hearing before this Court counsel for Hage was specifically
asked to amend the complaint to add a residual claim and he refused (Court Hearing of
7/29/2005, at T18:15-22).

level of the average OB/GYN physician."  Princeton accepted Hage's Part-Time Practice Application and issued a Part-Time Practice Endorsement on his policy effective August 15, 1997.  The Endorsement specifically provided that it was based on Hage's "representation" that his practice met Princeton's underwriting guidelines for part-time practice, including that "[y]our practice is limited to 21 hours or less per week."  Hage remained in part-time practice status with Princeton up to and including the August 2002 onset of his disability.

In addition to his part-time OB/GYN practice, from October 1999 to the onset of disability in August 2002, Hage became employed as a Physician Advisor, first with Riverview Hospital and next with UMDNJ.  As his OB/GYN practice dwindled, Hage sought and obtained a position at Riverview Hospital as a Physician Advisor.  He worked at Riverview until December 2001.  In July 2000, Hage secured a similar but more demanding position at UMDNJ, describing the position in a May 18, 2000 letter to UMDNJ as "a magnitude of a career change." He worked at UMDNJ as a Physician Advisor through 2004.

Hage's OB/GYN practice was not profitable, as his tax returns for 1999, 2000, 2001 and 2002 demonstrate.  In round numbers, he lost about $6,000 on his practice in 1999, lost $29,000 in 2000, lost $3,000 in 2001, and showed only a $12,000 profit in 2002.  Meanwhile, his income from his employment as a Physician Advisor was about $110,000 in 2001 and $94,000 in 2002. As his own accountant testified at deposition, Hage had two occupations in the years between 1999 and 2002, and the bulk of his income came from his employment as a Physician Advisor.

## 2.      Hage's 2002 Sale of His OB/GYN Practice

Even before filing his disability claim with Paul Revere in August 2002, Hage offered to sell his OB/GYN practice.  In June or July 2002, Dr. David M. Moskowitz, an OB/GYN practicing out of Toms River, approached Hage about renting space from him.  Much to Dr.

Moskowitz's surprise, Hage offered to sell his entire medical practice to him, claiming that he no longer wanted to pay his malpractice premiums.  They quickly concluded the sale of Hage's practice, with Dr. Moskowitz agreeing to pay Hage the not-so-princely sum of $5,000 in installments over 64 months, or $78.12 per month.  The sale of the practice was accompanied by Hage's covenant not to compete with Moskowitz in the OB/GYN practice.

### 3.       Hage's Sworn Admission That He Had a Dual Occupation

On June 14, 2002, weeks before filing his disability claim with Paul Revere, Hage was involved in a motor vehicle accident.  In a personal injury suit arising out of that accident, Hage responded under oath to an interrogatory wherein he stated that he was employed by UMDNJ in Newark and further described his position as "Physician/Advisor/OB/GYN."  And yet, in this case, Hage denies that he had dual employment in 2002.

### 4.       Hage's Attempt to Evade Paul Revere's Routine Inquiry Into His Employment Status

Section C of Paul Revere's claim form requested information concerning Hage's employment.  In response, Hage misrepresented that his duties were "full OB/GYN practice." He compounded the smokescreen by attaching an unsolicited personal letter dated August 15, 2002, claiming that he did not know how to address certain issues and questions on the claim form.  Hage's letter included the following convoluted statement that shrouded the truth of his dual employment: "I had no employment for obstetrics and gynecology other than my solo practice."

Hage compounded the deception in his response to Paul Revere's  Physician Questionnaire.  In response to the simple inquiry "please list any other occupation," he answered

"my OB/GYN practice is my only OB/GYN employment."  This is a blatant evasion.  Paul

Revere inquired about employment other than the already disclosed OB/GYN employment from

which he was claiming to be disabled.  Rather than disclose his part-time employment as a

Physician Advisor that paid him more than $100,000 in salary in the previous year, Hage

responded with gobbledygook.  The simple truth is that in the several years before filing his

disability claim, Hage made almost no income from his part-time OB/GYN practice and about

$100,000 per year from his part-time employment as a Physician Advisor.

PHLDMS1 4161210v.1

## POINT I

## HAGE SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE IN SUPPORT OF, OR MAKING REFERENCE TO, ANY CLAIM FOR PAYMENT OF FUTURE DAMAGES

Hage apparently intends to press a claim for future disability benefits under the policy. This is so despite the fact that his complaint is devoid of any allegations or facts to support such a legal theory. Claims for immediate payment of future disability benefits are barred by the plain language of the policy and the applicable case law.  Accordingly, defendants request that the Court enter an Order prohibiting Hage from presenting any and all evidence and testimony that bears on future benefits and further barring reference to future benefits in argument by counsel.

Part 2.1 of the policy specifies that Total Disability benefit payments are periodic, monthly payments and that such payments are limited to the period of Total Disability:

### 2.1  TOTAL DISABILITY BENEFIT

We will <u>periodically</u> pay a Total Disability benefit during Your Total Disability.  The <u>monthly</u> amount We will pay is the Maximum Monthly Amount.  It is shown in the Policy Schedule.

This benefit will begin on the Commencement Date.  <u>We will continue to pay it while You remain Totally Disabled</u>.  But in no event will We pay beyond the Maximum Benefit Period.  For periods of less than a month, We will pay 1/30th of the benefit for each day of Disability.

(<u>See</u> Policy, at Part 2.1, **Exhibit 1**. (emphases added).)

Part 9.6 of the policy reinforces not only the periodic, monthly nature of Total Disability benefits under the policy, but the additional requirement that payment of future benefits is subject to continuing proof that the insured remains under a Total Disability.  It provides:

**9.6  TIME OF PAYMENT OF CLAIMS**

After We receive satisfactory written proof of loss:

a.  We will pay any benefits then due that are not payable periodically; and

b.  We will pay at the end of each 30 days any benefits due that are payable periodically -- subject to continuing proof of loss.

(Id. at 9.6 (emphases added).)

The law of New York should apply according to the conflict of law rules to be applied by this Court.  At the time that the disability insurance policy central to this case was issued, Hage resided in New York.  However, at the time that plaintiff made a claim for benefits, he resided in New Jersey.  This presents a choice of law issue, which issue should be decided in favor of applying New York law under the circumstances.  Primary among the circumstances justifying the application of New York law is the fact that the policy was issued there.  The location of contracting is a significant factor in a choice of law analysis.  "New Jersey law commands that the law of the place of contracting should ordinarily be applied unless some other state has the dominant relationship with the parties and issues."  Polar Inter. Brokerage Corp. v. Investors Ins. Co. of Am., 967 F. Supp. 135, 141 (D.N.J. 1997) (internal quotation marks omitted); see Nelson v. Insurance Co. of N. Am., 264 F. Supp. 501, 503 (D.N.J. 1967).  "In the insurance context, the place of contracting is the place where the parties executed and delivered the insurance policy."  Polar Inter. Brokerage Corp., 967 F. Supp. at 141.  By having the place of an insurance contract control the choice of law, it generally comports "with the reasonable expectation of the parties concerning the principal location of the insured risk" and furnishes "needed certainty and consistency."  Gilbert Spruance Co. v. Pennsylvania Mfrs.' Ass'n  Ins. Co., 254 N.J. Super. 43, 46 (App. Div. 1992).  This Court should follow the general rule of applying the law of the place of contracting, which in this case was the State of New York.

New York case law recognizes that, subject to a narrow anticipatory repudiation exception, claims for future payment of disability insurance benefits are barred.  "Generally, an insured who sues its insurer for failure to pay benefits under a policy may only recover benefits that have already accrued."  Wurm v. Commercial Ins. Co., 308 A.D. 324, 327, 766 N.Y.S.2d

324, 327, 766 N.Y.S.2d 8 (1st Dep't 2003).  "[T]he New York rule [is] that in an action on a

disability policy the insured is not entitled to a lump-sum money judgment for future payments,

nor to a declaration to that effect with respect to the insurer's future obligations."  Romar v. Alli,

120 A.D. 421, 501 N.Y.S.2d 878 (1st Dep't 1986).  Where, as here, the disability policy provides

for monthly disability payments "subject to continuing proof of loss," the New York rule barring

lump sum recoveries of future benefits applies with full force.  Future events could result in a

termination of benefits:  either an insured's death before the age of 65, or the end of his or her

Total Disability would result in the termination of monthly disability payments.

The exception to the rule barring recovery of future disability insurance benefits is

triggered where the insurer repudiates the entire policy by disclaiming its intention to perform

under any circumstances.

As recognized by the Wurm court:

> Generally, an insured who sues its insurer for failure to pay benefits under
> a policy may only recover benefits that have already accrued ( *Teig v.
> First Unum Ins. Co.,* 282 A.D.2d 669, 723 N.Y.S.2d 707, *lv. dismissed* 97
> N.Y.2d 700, 739 N.Y.S.2d 99, 765 N.E.2d 302; *Romar v. Alli,* 120 A.D.2d
> 420, 421, 501 N.Y.S.2d 877; *Gordon v. Continental Cas. Co.,* 91 A.D.2d
> 987, 457 N.Y.S.2d 844). However, there is a narrow exception to this rule
> which provides for recovery of future benefits, where the insurer has
> repudiated the entire policy. This exception is applicable only where a
> plaintiff establishes that the insurer has committed an anticipatory breach
> by "disclaim[ing] the intention or the duty to shape its conduct in
> accordance with the provisions of the contract" ( *New York Life Ins. Co. v.
> Viglas,* 297 U.S. 672, 676, 56 S.Ct. 615, 80 L.Ed. 971). Repudiation
> occurs when the insurer completely abrogates any "obligation [ever] to
> make monthly disability payments, as when the insurer refuses to make
> further payments under the disability provisions of a life policy no matter
> what the proof of disability is given the insurer" (16 Couch, Insurance 3d
> § 232:43).

Wurm, 308 A.D. at 327-28, 766 N.Y.S.2d at 12 (alterations in original); see

MaGee v. Paul Revere Life Ins. Co., 954 F. Supp. 582, 585 (E.D. N.Y. 1997)

(stating that the "requisite … complete repudiation of the contract by the insurer .

. . cannot be inferred solely from the failure of the insurer to pay installment

benefits claimed by the insured to be owed . . . when, during the period of such

failure to pay, the insurer has continued to accept the insured's payment of

premiums under the policy").

New Jersey law is to the same effect.  In <u>Lauro v. Metropolitan Life Ins. Co.</u>, 80 F. Supp.

377, 378 (D.N.J. 1948), the Court found that the disability insurer had <u>not</u> repudiated the policy

where the insurer terminated monthly disability benefits and restored the policy to a premium

paying basis in the belief that the insured's disability had ceased.  In the <u>Lauro</u> Court's view, the

insurer's decision not to continue paying benefits "attacks only its liability to continue the total

disability payments and continues the policy in full force and effect upon a premium paying

basis."

Any attempt by Hage to interject evidence concerning future benefits into the trial of this

case should be rejected for two reasons.  First, although there is a fleeting reference in the

"WHEREFORE" section of the First Amended Complaint (Count I), nowhere does Hage plead

that Paul Revere repudiated the policy.  Since the general rule bars recovery of future periodic

disability payments, subject only to a narrow exception where the insurer has completely

repudiated the contract, Hage was required to plead his anticipatory repudiation theory of

recovery in the complaint.

More fundamentally, the First Amended Complaint does not even plead facts that can

fairly be construed as supporting a repudiation theory of recovery.  Despite its verbosity, Count I

boils down to the claim that Paul Revere "improperly and in breach of its agreement . . .

terminated [Hage's] benefits."  The termination of Hage's disability benefits is characterized in

language that supports an inference that Paul Revere had not repudiated any and all of its obligations under the Policy.  Instead, according to paragraph 23 of the First Amended Complaint, the termination of disability benefits was allegedly based on Paul Revere's misinterpretation of the Policy.

Importantly, Hage cannot plead repudiation of the Policy since he continues to pay premiums on the very policy he would now have to allege was repudiated in order to assert a claim for future benefits.  This inconsistency is the death knell to his repudiation claim.  Simply stated, he cannot claim the policy is repudiated on one hand and pay premiums to keep the policy in force with the other hand.  Moreover, the fact that Paul Revere sought to administer his claim under the Residual Disability clause leads to the inescapable conclusion that the policy has not been repudiated.

In support of his claim for future benefits, Hage proposes to present the testimony of Joseph Rosamilia, CPA, to testify about the present value of the policy.  Because recovery of future disability insurance benefits is barred by law, Rosamilia's testimony concerning the present value of the policy is not only irrelevant, but unduly prejudicial.  Since Hage has not set forth a cause of action for future benefits any testimony concerning the value of the policy would not be relevant.  Moreover, testimony concerning the net value of the policy would be unduly prejudicial to Paul Revere in that the trier of fact could be prejudiced by hearing the limits of insurance rather than focusing on the issues to be decided in this trial.  Clearly, if this Court where to find that future benefits were warranted, then a separate hearing could be conducted to determine the present value of the policy.  Since the present value calculation is merely mathematical, Rosamilia's testimony during the trial is not warranted.  Further, this type of determination concerning present value should be made by the Court and not by the trier of fact.

In sum, Paul Revere's acknowledgement of a willingness to consider paying Hage Residual Disability benefits and Hage's payment of premiums cannot, in any rational sense, be construed as a repudiation of the contract.  The fact that Hage disputes Paul Revere's interpretation of the contract does not transform the insurer's actions into a complete, anticipatory repudiation of the policy.

**POINT II**
**THE EXPERT TESTIMONY OF DOMINICK LAGRAVINISE MUST BE**
**EXCLUDED BECAUSE IT IS NOT RELEVANT EXPERT TESTIMONY AND WOULD**
**NOT ASSIST THE TRIER OF FACT**

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact
> to understand the evidence or to determine a fact in issue, a witness qualified as
> an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to
> the facts of the case.

Fed. R. Evid. 702.

Trial judges are charged with the duty of ensuring that only expert testimony that is

reliable and relevant to the issues in the case be admitted.  See Daubert v. Merrell Dow

Pharmaceuticals, 509 U.S. 579, 589, 113 S. Ct. 2786, 2795 (1993); see also Kumho Tire Co. v.

Carmichael, 526 U.S. 137, 147, 119 S. Ct. 1167, 1173 (1999) (holding that all expert testimony

must be tested for reliability and relevancy); Calhoun v. Yamaha Motor Corp., U.S.A., 350 F.3d

316, 321 (3d Cir. 2003).  "This entails a preliminary assessment of whether the reasoning or

methodology underlying the testimony is scientifically valid and of whether the reasoning or

methodology properly can be applied to the facts in issue."  Daubert, 509 U.S. at 592-93, 113 S.

Ct. at 2796.  The assessment of reliability and relevancy of proffered expert testimony is based

on a number of factors.  For sure, "[e]xpert testimony cannot be based on an expert's unfounded

assertion."  Faryniarz v. Nike, Inc., 2002 WL 1968351 (S.D.N.Y. 2002).

Hage proposes to offer the expert opinions of Dominick LaGravinese, a self-proclaimed

expert in disability claim handling.  This self-proclaimed expert, however, has never done any

claims handling.  LaGravinese's testimony is inadmissible under Fed. R. Evid. 702 and *Daubert*

Page 16 of 30

because: (1) it is not reliable since LaGravinese is not qualified to render expert opinions on claims handling, (2) it is not relevant because LaGravinese's insurance experience only relates to fraud investigation, and there is no issue in this case implicating a fraud investigation; and (3) the proposed subject areas on which LaGravinese is supposed to testify are not relevant to the issues at this trial.

LaGravinese worked for more than twenty years in field investigation and anti-fraud aspects of the insurance industry, including 12 years in the same area of the life, health and disability segment of the business.  For all intents and purposes, LaGravinese was a field investigator and subsequently a manager of field investigation.  Field investigations represent one limited aspect of the claim handling arena.  LaGravinese was not solely responsible for claims handling itself, nor was he involved in any aspect of policy interpretation.  His résumé (attached to his Expert Report as part of **Exhibit 4**) shows that he was employed from 1977-1988 by Equifax Services, Inc. in its Special Investigations/Surveillance unit, investigating principally workers compensation claims.  From 1988 until 2000, LaGravinese was employed by UNUM Life Insurance Company of America and later UNUMProvident Corporation (collectively "UNUM") as Manager of the Special Investigations Unit (1988-1992), Director of Field Services and Special Investigations (1992-1997), Head of  Field Services and Special Investigations (1997-1999), and Assistant Vice President in charge of Field Investigations Services in three regions.  In none of those jobs was LaGravinese directly responsible, on a day-to-day basis, for disability claim handling.  At UNUM, claim professionals who are responsible for the day-to-day decisions on disability claims hold the title of Disability Benefit Specialist.  Mindful of this troubling shortcoming in his qualifications as an expert in "disability claim handling," LaGravinese attempts to paper over the problem in his résumé as follows: "I performed all of the

Page 17 of 30

duties and responsibilities of a claim examiner (benefit specialist) and more, without holding the title of a Disability Benefit Specialist (DBS), which is also referred to as a Customer Care Specialist (CCS)."  (*See* LaGravinese Expert Report of 8/11/06, at 1-2, **Exhibit4**.)

Importantly, LaGravinese does not hold any of the designations from industry courses to be a claims professional.  In particular, insurance claims handling designations include the following: Associate Life & Health Claims (ALHC), Fellow, Life and Health Claims (FLHC), Register Health Underwriter (RHU), Associate, Customer Service (ACS), and Charter Life Underwriter (CLU).  For example, in the letter of Mason to Hage of June 29, 2004, attached as **Exhibit 3**, Mason's signature block indicates her designations of ALHC and ACS.  LaGravinese does not hold any of these designations because in his position in the area of field investigation he did not handle claims.

At his deposition, LaGravinese stated that such claims handling designations were not mandatory for him.  (See Dep. of Dominick LaGravinese of 5/9/07, at 10:23-11:16.) Conversely, LaGravinese does hold the designation of Certified Insurance Fraud Investigator (CIFU).  The CIFU designation pertains to his position as a field investigator, and would not be held by a person in claims.  Moreover, LaGravinese has no medical or legal training, and, accordingly, cannot opine on any of Hage's medical conditions.  Nor would it be permissible for LaGravinese to opine on legal conclusions surrounding the application of law (which is for the court to instruct the jury) to the facts of the case (which facts are to be determined by the jury). Simply, the issue to be determined by the trier of fact is what were Hage's important duties at the time of his disability, and whether Hage is entitled to Total Disability benefits under the policy. There is no issue to be decided in this trial as to Paul Revere's claims handling, and even if there was, LaGravinese is not qualified to give that testimony.

According to the Expert Report, Hage intends to offer LaGravinese's opinions as a disability claim handling expert in the four following subject areas:

(1) Marketing and claim practices of both UNUM and Paul Revere, "particularly whether [UNUM's] behavior included the prosecution of a Plan to operate an enterprise, through [UNUM's] subsidiaries, affiliates, customers, policy holders, claimants, claim-handling persons and entities and governmental and non-governmental regulators; which said enterprise engaged in wrongfully and in 'bad faith' denying and terminating disability claims in order to achieve financial objectives";

(2) "Whether [UNUM] and Paul Revere fulfilled their contractual obligations to Hage";

(3)  "Whether [UNUM] and Paul Revere satisfied their duty of good faith and fair dealing in their handling of  the Hage claim"; and

(4)  "Whether [UNUM's] handling of the Hage claim was part of its Plan as described in [1] above."

(*Id.* at 4.)

LaGravinese's "expert" claim handling testimony should be precluded for three reasons. First, he lacks the qualifications to testify as an expert in disability claim handling.  Rule 702 of the Federal Rules of Evidence requires that a proposed expert be "qualified . . . by knowledge, skill, experience, training, or education."  LaGravinese's résumé boasts only of his experience as a field investigator in the disability insurance industry, but he plainly lacks relevant experience as a disability claim handler to testify as an expert in disability claim handling.

Second, LaGravinese's  considerable employment experience in performing and supervising surveillance and other types of fraud and field claim investigation is but one aspect of the disability claim handling experience, and an irrelevant aspect at that.  Notably, the expert

report does not limit itself to "field investigation" as it pertains to Hage, which is the only

possible area in which LaGravinese might have knowledge that would be helpful to the trier of

fact at trial.  This case does not involve a relevant fraud investigation, and, therefore,

LaGravinese's potential "expert" knowledge in fraud investigation is not relevant.

 At his deposition, LaGravinese admitted that he did not have any designations or

certifications in claims handling.  (See Dep. of Dominick LaGravinese of 5/9/07, at 10:7-11:16,

**Exhibit 5**.)  Instead, LaGravinese only testified that he was a certified insurance fraud

investigator.  (See id. at 10:7-10:16.)  This case, however, has nothing to do with a fraud

investigation.

 Third, none of the proposed areas of testimony listed above is relevant to the pending trial

of the breach of contract claim in this case.  Rule 702 allows expert testimony only to the extent

that it "will assist the trier of fact to understand the evidence or to determine a fact in issue …."

Also see Rules 402 ("[e]vidence that is irrelevant is not admissible") and 403 (relevant evidence

may be excluded if "its probative value is substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay,

[or] waste of time").  Subject areas 1 (bad faith marketing and claim practices), 3 (good faith and

fair dealing in the handling of the Hage claim), and 4 (alleged claim handling pursuant to a

conspiratorial "Plan" to cheat unsuspecting claimants," all relate to the extra-contractual claims.

Recall, Counts II, III and IV of the First Amended Complaint have been deferred for future trial,

if necessary.

 With regard to subject area 2 (concerning whether Paul Revere "fulfilled [its] contractual

obligations" to Hage), such expert testimony is generally inadmissible to the extent that it

embraces opinions on contract construction.  See Brill v. Marandola, ___ F. Supp. 2d ___, 2008

WL 115007, at *5 (E.D. Pa. Jan. 10, 2008); Gallatin Fuels, Inc. v. Westchester Fire Ins. Co., 410

F. Supp. 2d 417, 421 (W.D. Pa. 2006) (stating that "opinions on the issue of contract

construction would not assist the jury in understanding coverage"); see also Loeb v. Hammond,

407 F.2d 779, 781 (7th Cir. 1969) ("The question of interpretation of the contract is for the jury

and the question of legal effect is for the judge."); Poblette v. Town of Smithville, 355 N.J.

Super. 55, 66 (App. Div. 2002) (holding that the trial judge was not required to give weight to an

expert's expression of opinion on the question of a legal duty); State v. Grimes, 235 N.J. Super.

75, 80 (App. Div. 1989).  Whether the parties satisfied duties arising from the policy is the

province of the trier of fact, and there is no reason to defer to expert opinion for the answers to

those issues.

Essentially, Rule 702 of the Federal Rules of Evidence contemplates that expert

testimony be helpful.  Although ultimate issue testimony is generally admissible in civil actions

under Rule 704, it is not admissible on breach of contract cases where the expert's testimony

embraces issues of contract construction because such testimony is not helpful as required by

Rule 702, and ought to be excluded as wasteful pursuant to Rule 403.

It is clear that Hage employed LaGravinese to offer expert testimony on a potpourri of

topics for which he is not qualified.  Due to this Court's ruling bifurcating the trial, all of the

areas in which LaGravinese was to offer testimony have been stayed.  Each of the four areas on

which Hage wishes to offer LaGravinese's expert testimony is not relevant to this trial and would

be unreliable in light of LaGravinese's lack of experience in claims handling.

PHLDMS1 4161210v.1

**POINT III**

**HAGE SHOULD NOT BE ALLOWED TO GIVE EXPERT TESTIMONY IN THIS CASE BECAUSE IT WOULD BE UNDULY PREJUDICIAL TO DEFENDANTS AND IS UNNECESSARY**

Hage himself intends to testify as an expert witness on the physical requirements of a practicing OB/GYN.  Any such testimony should be excluded under Rule 702 of the Federal Rules of Evidence because Paul Revere does not dispute that Hage is incapable of working as an OB/GYN.  Accordingly, testimony from any witness about the duties of an OB/GYN would be an irrelevant waste of time.

Fed. R. Evid. 702 permits expert testimony that "will assist the trier of fact to understand the evidence or to determine a fact in issue."  To recover "Total Disability" benefits under the Paul Revere policy, Hage must prove that he is "unable to perform the important duties of Your Occupation."  (Policy, at Part 1.9, **Exhibit 1**.)  "Your Occupation" is defined as "the Occupation in which You are regularly engaged at the time You become Disabled."  (Id. at Part 1.8.)  There is no dispute that on the date of his disability, Hage was both a self-employed, part-time OB/GYN and a part-time Physician Advisor employed by a hospital.  Paul Revere does not dispute the claim that Hage was unable to perform important OB/GYN duties; it does assert, however, that Hage was perfectly capable of performing the important duties of a Physician Advisor.

Under the circumstances, evidence of the duties and physical requirements of a practicing OB/GYN would not assist the jury in understanding the evidence or determining a triable issue in the case.  Only genuinely disputed issues require a trial.  Courts and juries have enough to wrestle with without being subjected to ponderous testimony that proves nothing germane.

Another point that should not be overlooked is that Hage is the claimant in this case.  As discussed, a primary issue at trial will be the duties of Hage's occupations as an OB/GYN and Physician Advisor.  Those duties are his own and it would be confusing to a jury to have a part of a litigant's testimony deemed "expert" when that litigant is merely talking about himself and his own observations.  Aside from confusing, defendants would be unduly prejudiced if the Court were to recognize Hage as an "expert" because the jury may give Hage more credence to his testimony than it is entitled.

PHLDMS1 4161210v.1

## POINT IV

## THE MEDICAL EXPERT TESTIMONY OF PHILLIP J. CALENDA, M.D. SHOULD BE EXCLUDED BECAUSE IT IS NOT RELEVANT TO THE ISSUES AT TRIAL

Hage will offer the expert medical testimony of Phillip J. Calenda, M.D. concerning Hage's eye condition.  For the same reasons the Hage's own expert testimony about the duties of an OB/GYN are irrelevant and inadmissible under Fed. R. Evid. 702, so is Calenda's.  Paul Revere does not challenge Hage's claim that an eye condition disables him from his OB/GYN practice.

Notably, Hage apparently intends to call upon his treating physician, Dr. Bruce Berg, to give testimony concerning Hage's eye condition.  Defendants do not object to brief testimony from the treating physician about Hage's condition and any related medical aspects of the condition.

Accordingly, Dr. Calenda's expert testimony should be precluded on the ground that (1) it will not assist the jury in understanding the evidence or in determining a fact in issue, and (2) it would be cumulative of Dr. Berg's testimony and a waste of time.

<u>**POINT V**</u>

<u>**THE DEPOSITION TESTIMONY OF THE FORMER CEO OF UNUMPROVIDENT
SHOULD BE EXCLUDED**</u>

Hage may also seek to introduce the deposition testimony of Harold Chandler, former CEO of UnumProvident.  Whatever bearing the Chandler deposition testimony may have on the extra-contractual issues that were bifurcated for separate trial, the Chandler testimony is irrelevant to any issue in the breach of contract trial.

Paragraph 24 of the First Amended Complaint quotes two questions and answers from 1999 deposition testimony that Chandler gave in an unrelated federal Northern District of California case as "evidence that UP's alleged contractual basis for terminating Hage's benefits was a blatant sham."  At the deposition of Susan Moore in this case, Hage's counsel had Moore read portions of Chandler's deposition testimony into the record.  All of this could potentially relate to the RICO and other extra-contractual claims that may or may not have to be tried in the future, and has no bearing on the dual employment-related breach of contract claim at issue in the upcoming trial.

PHLDMS1 4161210v.1

## POINT VI

## CERTAIN IRRELEVANT DEMONSTRATIVE EVIDENCE SHOULD BE PRECLUDED

Hage will seek to introduce demonstrative evidence of timelines, a photograph, and a bar chart at trial.  Defendants request that, before any demonstrative evidence be published to the jury, foundation testimony be provided by Hage relating to each of the items depicted in the demonstrative evidence.  Any discrepancies between the demonstrative evidence and the foundation testimony should result in exclusion of the demonstrative evidence on the basis of its potential to mislead the jury.  See Fed. R. Evid. 403.

### A.    Medical Illustrations of Human Eye and Female Pelvis

Hage plans to offer the illustrations of the human eye and the female pelvis. Neither is relevant to any disputed issue at the trial of the breach of contract claim and both should be excluded.  The illustration of the human eye will apparently be offered to explain the eye condition that disables Hage from employment as an OB/GYN.  The illustration of the female pelvis may be intended to demonstrate one or more aspects of an OB/GYN practice.  As discussed above, Paul Revere acknowledges that Hage's eye condition prevents him from performing as an OB/GYN.  Accordingly, there are no triable issues that require testimony about, or depictions of, either the human eye or the female pelvis.

### B.    Baby Photograph

Defendants object to a photograph of a baby delivered by Hage prior to August 2002 on the basis that it is not relevant and it is unduly prejudicial.  See Fed. R. Evid. 401, 402 and 403. The photograph of the baby is not relevant to the issues relating to the alleged breach of contract.

Moreover, the photograph has the potential of improperly appealing to the passions of the jurors instead of informing on the facts relevant to the case.

The photograph of the baby does not make any matter relating to breach of contract more or less likely.  Even if relevant, the photograph ought to be excluded as unfairly prejudicial pursuant to Fed. R. Evid. 403.  The photograph appears to be an attempt by plaintiff to garner sympathy with the jury.

In addition, the photograph should be excluded from evidence because it was not disclosed despite photographs having been requested by defendants in discovery.  Specifically, in defendants request for production of documents dated August 23, 2005, at numbers 48, 54, 55, 56, and 57, defendants requested photographs.  Hage did not provide any such photograph in response to the August 23, 2005, request for production.  Accordingly, Hage should be precluded from presenting such a photograph at trial.

### C.      Summary Graphic of Testimony

Defendants object to any summary graphic of testimony of witnesses at trial that appear for Hage on the basis that it is confusing and fraught with danger of mischaracterization of the testimony.  <u>See</u> Fed. R. Evid. 403.  At this point, there is no reason to believe that the trial testimony will be so complicated as to be beyond the average juror's ability to comprehend without the assistance of a summary graphic.

### D.      Timelines and Bar Chart

Hage seeks to introduce timelines of his eye health and OB/GYN career and a bar chart of the hours he worked.  As stated above, such demonstrative evidence is fraught with the danger that the testimony at trial will not coincide with the items depicted in the timelines and bar chart. Defendants request that the Court exercise its authority under Fed. R. Evid. 611(a) to control the

mode by which demonstrative evidence is presented so as to prevent demonstrative evidence from depicting things that are not supported by testimony.

To the extent that the timelines refer to Hage's eye health, the timelines are irrelevant. As stated above, Paul Revere does not challenge the fact that Hage's eye condition prevents him from performing as an OB/GYN.  Accordingly, the timelines should be either redacted or excluded in their entirety pursuant to Fed. R. Evid. 402.

Importantly, moreover, while the demonstrative evidence may be admissible pursuant to Fed. R. Evid. 611(a), the admission of the chart and timeline into evidence must be accompanied by an instruction to the jury that the chart and timeline are not themselves evidence.  *See United States v. Blackwell*, 954 F. Supp. 944, 972 (D.N.J. 1997) ("When Rule 611 charts are used . . . it is required the charts be accompanied by an instruction from the court which 'informs the jury of the summary's purpose and that it does not constitute evidence.'")  In the event that Hage is relying upon Fed. R. Evid 1006 to support the admission of the chart and timeline, defendants request pursuant to that rule that the originals or duplicates of the documents used to create the chart and timeline be made available for examination and copying by defendants at a reasonable time and place.

### E.       Objections to Non-Identified Documents.

In the Pre-Trial order that was filed on December 28, 2007 Hage has identified "bulk" exhibits.  By way of example, exhibits 6 through 8 simply identify groups of documents without specification.

> Document 7.   Documents supplied by Meridian Hospital Corp.,
> Monmouth Medical Center, Riverview Medical
> Center, and Jersey Shore Medical Center pursuant
> to subpoena, together UMDNJ documents the

September 20, 2001 letter by Timothy P. Sullivan, MD to Plaintiff, and the documents supplied by UMDNJ at the deposition of Dr. Suresh Raina.

Document 8.    Unum's claim file covering Plaintiff's claim together with transcripts of and exhbits marked at deposition in this matter, <u>Hage v. UnumProvident</u>, including documents marked and identified as Unum documents at depositions of Susan Moore, Linda Mason, Dannimarie Comeau and Yolanda Golver. ....(See, Pre-Trial Order, Hage's exhibit list.)

Document 9.    Excerpts from Unum claims manuals.

Moreover, in the Pre-Trial Order Plaintiff included the following:

N.B. the Particular documents and testimony used by Plaintiff in Document 7,8 and 9 above will depend on the facts and issues contested by Defendants....(See, Pre-Trial Order, Hage's exhibit list.)

The above sections of Hage's exhibit list do not properly delineated the trial exhibits that he may use and therefore Paul Revere cannot properly prepare for trial and object to said exhibits in the within motion.

Paul Revere specifically objects to the authenticity of the documents listed above including the September 20, 2001 letter by Timothy P. Sullivan, MD.  While authenticity is not the proper subject of a motion in limine Paul Revere will seek to exclude this document at time of trial unless a proper foundation is laid and authenticity can be established.

Clearly, Paul Revere cannot provide specific objections to documents that have not been properly identified.  As such, Paul Revere is specifically reserving their right to challenge any document that has not been specifically identified in the December 28, 2007 Pre-Trial Order.

## **CONCLUSION**

In light of the foregoing, defendant respectfully request that this Court enter an order:

(1) granting defendants' motion *in limine*;

(2) excluding testimony or evidence relating to future benefits or the value of the policy;

(3) excluding testimony of Dominick LaGravinese;

(4) excluding expert testimony of plaintiff Charles W. Hage;

(5) excluding testimony of Phillip J. Calenda, M.D.;

(6) excluding any evidence relating to testimony of Harold Chandler;

(7) excluding Hage's demonstrative evidence relating to timelines, a photograph, a bar chart, and a summary graphic of testimony;

(8) excluding letter by Timothy P. Sullivan, MD of September 20, 2001; and

(9) requiring Hage to provide greater description with regard to proposed exhibits 6 through 8 of the Pre-Trial order filed December 28, 2007, so as to allow defendants an opportunity to object, or otherwise exclude exhibits 6 through 8.


Date:  April 4, 2008                                    Respectfully submitted,

By:  s/ Andrew I. Hamelsky
            Andrew I. Hamelsky, Esq. (AH-6643)
            White and Williams LLP
            The Atrium, East 80 Route 4
            Paramus, New Jersey 07652
            Phone: 201-368-7200
            Fax: 201-368-7246
            *Attorneys for defendants UnumProvident*
            *Corporation and The Paul Revere Life Insurance*
            *Company*