# UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES W. HAGE, | **Civil Action No.: 04-CV-5933 (MLC)(TJB)** |
| *Plaintiff,* | |
| -vs.- | |
| UNUMPROVIDENT CORPORATION and THE PAUL REVERE LIFE INSURANCE COMPANY, | |
| *Defendants.* | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF COUNSEL'S MOTION FOR SANCTIONS AND DEFENDANTS' REQUEST TO THE COURT THAT SANCTIONS BE IMPOSED UPON PLAINTIFF'S COUNSEL

White and Williams LLP
The Atrium, East 80 Route 4
Paramus, New Jersey 07652
Phone: 201-368-7200
Fax: 201-368-7246
*Attorneys for defendants UnumProvident Corporation and The Paul Revere Life Insurance Company*

*On the brief:*
Andrew I. Hamelsky (AH-6643)
Rafael Vergara (RV-4098)

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff's attorney, David Hoffman's ("Hoffman"), motion is nothing more than an attempt to put defendants, and their counsel, in a bad light in the hope of bolstering his case where the facts of the case fail to do the job.  In light of the harassing nature of his sanctions motion, and the unnecessary compounding of litigation resources that have been expended to deal with this frivolous motion, defendants suggest that the Court award costs, expenses, and attorney's fees, to defendants as permitted by Fed. R. Civ. P. 11 and 28 U.S.C. § 1927.

Hoffman's, motion for sanctions is based not upon  law or an ethical violation, but rather upon Hoffman's twisted view of the facts with the law.  What is noticeably absent from Hoffman's brief and self-serving certification is actual case law substantiating his legal positions.  When one strips away Hoffman's hyperbole one is left with nothing more than the baseless allegations coupled with wild unsubstantiated allegations.

In this motion, Hoffman argues that defendants misconstrued Hage's residency.  Hoffman makes this argument without citing a single case.  He makes this argument despite the fact that his client represented to defendants that he was a resident of New York.  He makes this argument despite the fact that he signed the application for the policy in New York. He makes this argument despite the fact that he paid for the policy in New York.  He makes this argument despite the fact that the policy was delivered in New York.  He makes this argument without regard for the well-established legal principle that a person can have more than one legal residence.  Hoffman ignores the above and yet has the gall to say that defendants misrepresented facts—he should be sanctioned.

Hoffman urges in this motion that defendants failed to cite a case to the Court that Hoffman believes to be relevant.  Again, Hoffman misleads this court.  The *Cipala v. Lincoln*

*Technical Institute*, 179, N.J. 45 (2004) case is not directly on point, but even assuming that it was, it actually supports defendants position the one cannot collect future benefits without an anticipatory breach. Hoffman fails to advise the court of the legal requirement to prove an anticipatory breach, as he may fear malpractice repercussions since his 28-page First Amended Complaint of January 10, 2005, does not set forth a claim or even allegation for anticipatory breach. Not alleging anticipatory breach in the complaint is a fatal error, and one that Hoffman hides from this Court. Despite his legal shortcomings, he wants this court to rule in favor of a cause of action he *never* pled.

Hoffman's motion for sanctions arises out of a dispute regarding choice of law. Hoffman knows that if New York law prevails he has no claim for future benefits. As such, he has concocted an argument that there is a conflict between New Jersey and New York with regard to whether a claim for future benefits is cognizable for an alleged breach of a disability insurance policy where it is not alleged, and cannot be proven, that there has been an anticipatory breach.. Of course, this is not true as New Jersey, like New York recognizes that there must be an anticipatory breach to even allege a claim for future damages. Hoffman knows, he cannot plead such a claim as there are no facts to support it. In fact, Hoffman knows that his client still pays premiums on the policy, conclusively foreclosing a claim for anticipatory breach. As a result, Hoffman brings the instant sanctions motion either out of frustration or sheer ignorance.

In bringing this motion, Hoffman completely and without shame, fabricates the facts before this court. Defendants beg this Court to review Hoffman's statement of facts where he manufactures for his own self serving purposes an attorney-client conversation(s) between defense counsel and defendants. This fabrication that was represented to the court as true, merits sanctions against Hoffman. It also highlights the

2

fact that Hoffman has no regard for the truth or civil process.  It is therefore respectfully submitted that this court deny Hoffman's mean spirited and misguided sanctions motion and in-turn sanction him for his obvious transgressions.

3

## BACKGROUND FACTS

This case arises from a denial of "total disability" benefits pursuant to a disability insurance policy issued to plaintiff Charles W. Hage ("Hage") by defendant The Paul Revere Life Insurance Company ("Paul Revere"). Paul Revere denies that any total disability benefits are due to Hage. The policy definition of "total disability" is as follows:

> 1.9 **"Total Disability"** means that because of Injury or Sickness:
> a. You are unable to perform the important duties of Your Occupation; and
> b. You are under the regular and personal care of a Physician.

The term "your occupation," referenced in the "total disability" definition, provides:

> 1.8 **"Your Occupation"** means the occupation in which You are regularly engaged at the time You become Disabled.

Paul Revere's denial of total disability benefits under the policy is based primarily upon the fact that at the time of his alleged disability, Hage was engaging in the important duties of an OB/GYN **and** a Physician Advisor. Because the Your Occupation definition, by its terms, looks at the occupational activities of Hage at the time of his alleged disability, the definition includes both Hage's OB/GYN and Physician Advisor occupations. Accordingly, Paul Revere contends that because Hage is admittedly not disabled from performing the duties of a Physician Advisor in which he was engaged prior to his disability (and which position was his primary source of income before his disability), Hage cannot be entitled to "total disability" benefits. Hage does not deny that he was engaged in the occupations of OB/GYN and Physician advisor on the date of disability, and that he continues to be a Physician Advisor. Hage also does not deny that his primary source of income before his disability, and up until today, is the occupation of Physician Advisor.

A dispute has arisen with regard to the choice of law in this case.  Basically, defendants take the position that there is no conflict of law between New York and New Jersey with regard to the issues to be tried in the first segment of the bifurcated trial.  This first segment will deal exclusively with Hage's breach of contract claim.  Hoffman, however, takes the position that a conflict does exist between New York and New Jersey because New York law bars claims for future damages in the absence of anticipatory breach while New Jersey law does not.  Defendants maintain that there is no such conflict between New York and New Jersey on the future damages issue as both states bar claims for future damages without first proving an anticipatory breach.

As a result of the choice of law dispute, Hoffman alleges that defendants created two fabrications:

(1) That Hage's residence at the time of the application was New York; and

(2) That the policy was issued in New York.

Defendants maintain that the two positions alleged to be fabrications are in fact true despite Hoffman's ranting in the motion papers.  The policy, which includes the application signed by Hage, makes clear that both (1) Hage's residence was represented by Hage to be in New York, and (2) the policy was issued in New York.  Of course, Hoffman, despite admitting that the application was signed in New York, that Hage represented that he was a resident of New York and that the premiums were paid in New York and the policy was delivered in New York still makes the instant motion without merit.

5

## POINT I

## PLAINTIFF'S MOTION VIOLATES THE "SAFE HARBOR" PROVISION OF RULE 11

Fed. R. Civ. P.11 ("Rule 11") contains a "safe harbor" provision that requires that a party making a motion for sanctions under the rule first give the opposing party an opportunity to withdraw the "challenged paper, claim, defense, contention, allegation, or denial." *Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 200 (D.N.J. 1999). The safe harbor provision states as follows:

> **(2)** *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed. R. Civ. P. 11(c)(2).

Plaintiff's attorney, David Hoffman, served a notice of motion for Rule 11 sanctions dated April 8, 2008. (*See* Notice of motion of 4/8/08, **Exhibit 1.**) That notice of motion, however, was not the same as the one filed with the Court, dated May 6, 2008. The failure of Hoffman to serve the Rule 11 motion first, and then file the same motion, violates the safe harbor provision of Rule 11. Accordingly, the motion filed on May 6, 2008, is facially invalid and ought to be denied.

Some specific differences between the two motions are as follows:

- The April 8 notice of motion did not identify any challenged writing. (*See id.*) Meanwhile, the May 6 motion filed with the court does refer to filed document number 96.

- The April 8 notice of motion alleged that defendants violated New Jersey Rule of Professional Conduct 3.3. (*See id.*)  The present motion contains no such allegation, which is probably due to Hoffman's realization that the allegation was wholly without merit.

- The April 8 notice of motion did not include any supporting documents, unlike the filed motion of May 6 which contains a brief, a certification from Hoffman of May 6, 2008, and a certification from plaintiff Hage of March 31, 2008. *(Notably, both of the certifications are a nullity due to the fact that they do not comply with 28 U.S.C. § 1746.  Specifically, both certifications, as unsworn certifications, fail to contain the required language that they were executed under penalty of perjury.  Accordingly, both certifications ought to be disregarded.)*

Notably, in an effort to save the Court from considering this motion, defendants sent Hoffman a letter in response to the April 8 notice of motion pointing out defendants' positions, and the weakness of Hoffman's positions.  (*See* Letter to Mr. Hoffman of 4/28/08, **Exhibit 2**.)  Hoffman, however, was apparently only affected by the letter to the extent that he omitted from the May 6 motion any reference to New Jersey Rule of Professional Conduct 3.3.

This present motion is a good example of the litigation tactics Hoffman employs. In the April 8 motion, Hoffman pays lip service to the requirements of the safe harbor provision by even discussing it in the notice of motion.  (*See* Notice of motion of 4/8/08, **Exhibit 1.**)  Then, on May 6, Hoffman files this present motion that is completely different from the April 8 motion.  In light of Hoffman's failure to follow the "safe harbor" provision of Rule 11, the motion should be denied.  In the event that

the Court considers the May 6 motion on its merits, the remainder of this brief will

address the issues raised in this new set of motion papers.

## POINT II

## THE RULE 11 STANDARD AND HOW PLAINTIFFS' ATTORNEY HAS VIOLATED IT BY FILING THIS FRIVOLOUS MOTION

### A. The Rule 11 Standard

Hoffman apparently believes that if he makes enough unfounded accusations eventually this Court will think there is some basis to his rantings. Hoffman's motion for sanctions is a celebration of his attempt to misguide this Court into thinking that his case has more merit than the full facts reveal.[1]

Before proceeding to the ways in which Hoffman transgresses the very rule that he relies upon in this motion, it is useful to discuss the rule itself. Rule 11 provides, in relevant part, as follows:

**(b) Representations to the Court.** By presenting to the court a pleading,

---

[1]    One of Hoffman's methods of attempting to misguide the Court in this case has been his use of half-truths. For example, in the opening paragraph of his brief he notes that a "proverbial Chinese philosopher said: 'Enough is enough.'" (Brief in Supp. of 5/6/08, at 1.) It is assumed that the "Chinese philosopher" referred to was 老子 (Lǎozi, also called Lao Tzu). The full declaration of the intention attributed to Lao Tzu, however, gives a completely different meaning than just saying that "enough is enough." In fact, the fuller meaning of Lao Tzu's supposed declaration is: "He who knows that enough is enough will always have enough." *See WorldofQuotes.com* (visited May 15, 2008) <http://www.worldofquotes.com/author/Lao~Tzu/1/index.html> (**Exhibit 7**); Laozi – Wikiquote (visited May 13, 2008) <http://en.wikiquote.org/wiki/Laozi> (**Exhibit 8**).

As this simple example demonstrates, Hoffman has no problem in only giving part of the story in order to suit his purposes. Defendants urge this Court to look closely at Hoffman's statements in this motion because, as discussed in this brief, some of his positions are not completely forthcoming. This Court should put an end to Hoffman's efforts to misguide this Court by his continuing activities that needlessly drive up litigation costs and attempt to misguide the Court. Both Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 should be employed by this Court to curtail Hoffman's harassing and time wasting activities.

written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) **Sanctions.**

. . . .

 (3) ***On the Court's Initiative.***  On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

Fed. R. Civ. P. 11.  A court applies "'an objective standard of reasonableness under the circumstances'" in determining whether Rule 11 sanctions are to be imposed.  *Signorile v. City of Perth Amboy*, 523 F. Supp. 2d 428, 435 (D.N.J. 2007).

Rule 11 is reserved for "exceptional circumstances," and is not simply imposed because a party is "'on the unsuccessful side of a ruling or judgment.'"  *Id.*  For Rule 11 sanctions to be warranted, a claim or motion must be patently frivolous or unmeritorious.  *See Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, 507 F. Supp. 2d 484, 489 (D.N.J. 2007).  In essence, Rule 11 "'seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law.'"  *Signorile*, 523 F. Supp. 2d at 435. The court,

10

therefore, "must exercise discretion and sound judgment in dealing with the myriad methods with which lawyers may abuse the judicial process.'"  *Id.*

Essentially,  Hoffman complains of defendants' litigation tactics and alleged "outright fabrications."  (Brief in Supp. of 5/6/08, at 1.)  As this brief will discuss, Hoffman is upset that (1) his client may have misrepresented his "residence" on the application for the disability insurance policy, and certain consequences may now flow from that; and (2) defendants did not cite to a New Jersey case that helps them and which is not directly on point factually.  A discussion of Hoffman's allegations on this motion, and their lack of merit, is contained in **Point III** and **Point IV** *infra.*


### B. Hoffman's Violation of Rule 11 By Filing This Motion

In the event that this Court does not reject Hoffman's motion outright, defendants respectfully request that a hearing, and oral argument, be held with regard to the allegations made in this motion.  Specifically, defendants seek an opportunity to question Hage and Hoffman on allegations made in the "Facts" section of the brief in support of this motion.  Hoffman has crossed the Rule 11 line here.  Specifically, Hoffman states in the "Facts" section of his brief, in relevant part, as follows:

> The facts and context are not complex.  Defense counsel apparently received marching orders from corporate counsel: Avoid the <u>Cipala</u> case, under which Defendants pay future benefits on a finding of a breach and permanence of disability, by arguing that the law of New York, not New Jersey, applies.  Use any means necessary, including fabricating facts to make the argument that New York law applies.
> Defense counsel obeyed.

(Brief in Supp. of 5/6/08, at 2.)  First, Hoffman states as fact that "Defense Counsel apparently received marching orders from corporate counsel" to avoid the case of *Cipala v. Lincoln*

11

*Technical Institute*, 179, N.J. 45 (2004).  (Brief in Supp. of 5/6/08, at 2.)  Defendants challenge Hoffman to come forth with any evidence of such marching orders.

Second, Hoffman also states as fact that such marching orders also included this instruction: "Use any means necessary, including fabricating facts, to make the argument that New York law applies."  (*Id.*)  Again, defendants challenge Hoffman to present any evidence of such an instruction.

Third, Hoffman states as fact that "[d]efense counsel obeyed" instructions from corporate counsel to fabricate facts.  (*Id.*)  Defendants challenge Hoffman to present evidence of both the instruction and defense counsel's obedience. Defendant's respectfully request that Hoffman, under oath, substantiate his "facts".  Clearly, he has no issue with signing a pleading and violating Rule 11.  I doubt even Hoffman would testify to the veracity of his "facts" in court, under oath.

Hoffman will not be able to give any evidence of any of these matters that he asserts as facts in his brief.  The brief relies on these facts in forming its arguments.  The entire brief is tainted by these alleged "Facts" for which Hoffman has absolutely no proof, and no good faith basis for asserting.  Defendant's urge this court to sanction Hoffman for making such spurious statements.

Despite a letter of April 28, 2008, to Hoffman attempting to prevent this needless motion practice, Hoffman has pressed forward seeking Rule 11 sanctions.  (*See* Letter of Mr. Hoffman of 4/28/08, **Exhibit 2**.)  Defendants take this situation Hoffman raises seriously.  Defendants believe that Hoffman has asserted the above matters as facts, despite him not having any evidence or good faith basis for believing that they are accurate.  Hoffman's alleged facts are clearly directed to influence the Court in the hope of obtaining sanctions against defendants.  In

his pursuit for sanctions against defendants, it seems that Hoffman himself has transgressed Rule 11.  Accordingly, if this motion is not rejected outright, defendants seek the opportunity to conduct a hearing wherein Hoffman and/or Hage will have to offer proof of the facts alleged in the Rule 11 motion that Hoffman signed as an officer of this Court.

## POINT III

## HOFFMAN'S ALLEGATIONS THAT DEFENDANTS MADE FACTUAL FABRICATIONS ARE WITHOUT MERIT

Hoffman asserts that defendants created two fabrications that he wants corrected.  First, Hoffman wants it as accepted fact that Hoffman's residence was in Connecticut despite the undisputed fact that Hage stated in the policy application that his residence was in New York.  Second, Hoffman wants it as accepted fact that the policy was issued in Massachusetts despite the undisputed facts that it was signed for by Hage in New York and he paid his first premium in New York.  Essentially, Hoffman wants this Court to ignore the documentary evidence, the law relating to place of contracting, the law relating to the definition of a "residence," and instead accept his outlandish version of what this Court should accept as the facts and law to be applied in this case.

The issue of Hage's residence at the time the policy was issued, and the place of contracting for the policy, are issues that pertain primarily to the choice of law issue that was first raised by defendants in their cross-motion for summary judgment brief of October 26, 2006, at Point II.  Recently, defendants have again briefed the issue of choice of law in connection with motions in limine.

### A.      *Residence.*

It is not disputed that the policy application (which is a part of the policy itself) was signed by Hage in New York and identifies Hage's residence as being in Bronx, New York.  (*See* Policy, at Application, Part I.A, **Exhibit  3**.)

14

Hage apparently believes that his residence for purposes of the policy application is not governed by the fact that he represented on the policy application that his residence was in New York.  This of course despite the fact that Hage certified that his answers on the application were true and correct.  Interestingly, on the application, Hage not only represented having his residence in New York, but also appeared to make the representation that it had been his address for "27 YRS."  (*Id.*)  What is more, the application states, next to Hage's signature, that it was signed in New York.  (*Id.* at Application, at 6.)

As noted, defendants raised the issue regarding choice of law in their cross-motion for summary judgment in October 2006.  (*See* Defs.' Memo. of Law of 10/26/06, at Point II, **Exhibit 4**.)  Hoffman did not raise any concerns about defendants' position about Hage's residence in their opposing brief, but apparently now in 2008 chooses to create this issue about an alleged fabrication.  (*See* Pl.'s Brief in Response to Defs.' Mot. for S.J. of 11/20/06, at 13-14, **Exhibit 5**.)  What Hage fails to recognize is that for purposes of the policy application, as signed by Hage, Hage was a New York resident, and he was issued a New York policy.

Defendants maintain that Hage is a resident of New York for purposes of where the policy was issued.  For the choice of law analysis, the residence of the insured is generally only relevant to the extent that it may affect the place of contract.  In the disability context, it is also relevant to the extent that it indicates the location of the insured risk (that is, Hage).  Importantly, Hage admits that the policy application he signed misrepresented his address. (*See* Certif. of Dr. Charles W. Hage Dated March 31, 2008, ¶2.)  In fact, Hage acknowledges that the probable contemplation of providing a New York address on the policy application was so that the policy be delivered there.  (*See id.*)  Accordingly, for purposes of this litigation, Hage's residence at the time the policy was issued was in the State of New York.

15

Despite Hage's own representation on the policy application (which is a part of the policy), Hage now wants to take it back—after having availed himself of any benefits New York law may have provided him.  In other words, he admits that the policy contains a misrepresentation, he had the advantage of that misrepresentation by being issued a New York policy, and now that New York law may not suit him he wants to undo things.

Importantly, the application forms a part of the policy.  For example, on the front page of the policy it states: "We have issued this Policy to You in Consideration of the payment of the premium and the statements made in Your application.  **Your application is part of this Policy**."  Then again in Part 1.1, the policy states that the term "Policy" is defined to include the application.  (*See* Policy, at 6 (emphasis added), **Exhibit 3**.)  And, yet again, in Part 10.1, the policy states the following: "This Policy (with the application and attached papers) is the entire contract between You and Us."  (*Id.*, at 17.)  The policy, therefore, cannot be separated from the representations in the application Hage signed.  Even the application, at the section where Hage signed, indicates that that statements and answers in the application "will become part of this Application and any policy(s) issued on it."  (*Id.*, Application, at 6.)

Since the application is a part of the policy, the next thing to consider is how the representation of a New York residence affected the policy.  The policy language plainly links the policy to the State of New York.  First, Part 1.14 specifically makes references to the "New York Superintendent of Insurance."  (*Id.* at 9.)  Indeed, in discussing the definition for the "CPI,"[2] it is stated that in the event it may be needed, Paul Revere may choose an "index that is acceptable to the **New York Superintendent of Insurance**."

---

[2]        That is, Consumer Price Index for All Urban Consumers.

(*Id.* (emphasis added).)  That CPI definition is included in the residual disability benefit section of the policy, and accordingly, under a particular circumstance, the amount of residual disability benefits Hage could be entitled to would depend upon the New York Superintendent of Insurance.

Second,  Part 10.3 of the policy states as follows:

> **10.3   CONFORMITY WITH STATE STATUTES**
> Any provision in this Policy which, on its Date of Issue, conflicts with the laws of the state in which You reside on that date is amended to meet the minimum requirements of such laws.

(*Id.* at 17.)  Based upon the application signed by Hage, he resided in Bronx, New York. Accordingly, the policy explicitly makes reference to where the insured resides, which according to the application (which is a part of the policy) is in the State of New York.

Aside from the policy, the Required Disclosure Statement (Policy Form 960f), which Hage uses in this litigation in another context, specifically references the "New York State Insurance Department."  (*See* Required Disclosure Statement (Policy Form 960f), attached as part of **Exhibit 3**.)  Hage never complained about that required disclosure statement.  The Required Disclosure Statement (Rider Form H771R – Lifetime Total Disability Benefit Rider) also makes reference to the New York State Insurance Department.  (*See* Required Disclosure Statement (Rider Form H771R – Lifetime Total Disability Benefit Rider), attached as part of **Exhibit 3**.)[3]  Again, Hage never complained about this other disclosure statement being wrong. Importantly, at no time did Hage seek to correct the misrepresentation on the application.

---

[3]      In addition, Hoffman attaches to his certification documents that he thinks are "particularly notable because they illustrate the Policy issuance procedure in considerable detail."  (Certif. of David Hoffman, Esq. of 5/6/08, ¶ 3(B).)  Those pages are at pages 6 to 8 of Exhibit B to Hoffman's certification.  Page 8 of Exhibit B, which bears the title of "Assembly Instructions" specifically refers to "STATE: NY."

Hoffman is simply wrong in his assertion that because Hage went to school away from his family address in New York he could not be a resident of New York. Hage acknowledges that the New York address on the application was the "'family address'" where he grew up. (Certif. of Dr. Charles W. Hage Dated March 31, 2008, ¶2.) Hoffman, however, forgets (or failed to attend his first-year civil procedure law school classes where this is generally taught) that a person may have several residences, and that the residence stated on the application was indeed a family residence that resulted in him getting a New York policy. Both New Jersey and New York recognize that a person may have more than one residence. *See D.L. v. Board of Educ. of Princeton Regional School District*, 366 N.J. Super. 269, 274 (App. Div. 2004); *Santeez v. State Farm Ins. Co.*, 338 N.J. Super. 166, 174 (Law. Div. 2000) ("While a person may have only one true domicile, he may have more than one residence."); *Gletzer v. Harris*, 854 N.Y.S.2d 10, 13 (1st Dept. 2008) (stating that for personal jurisdiction purposes "a person may establish a residence in another place while maintaining his former domicile"); *Laufer v. Hauge*, 528 N.Y.S.2d 878, 879 (2d Dept. 1988); *see also* The Late Charles Alan Wright and Mary Kay Kane, 20 *Fed. Prac. & Proc. Deskbook* § 28 (The Meaning of Citizenship) ("A person may have a number of residences . . . .).

Hage represented on the policy application that he was a resident of New York. (*See* Policy, at Application, Part I.A, **Exhibit 3**.) Since a person may have more than one residence, the fact that he may have worked in Connecticut, and even lived there for a time, does not defeat the fact that Hage may properly be considered to have been a New York resident. As shown above, it is clear that, for purposes of the policy, Hage resided

18

in New York at the time it was issued.  That Hage's residence should be deemed to be that of New York is based on no less than Hage's own representation in the policy application that he signed, and in his tacit understanding of that representation by not giving any complaint about the fact that the policy that was issued with references to New York.

Hoffman argues that the deposition of Hage shows that he resided in Connecticut. (*See* Certif. of David Hoffman, Esq. of 5/6/08, ¶ 3; *see also* Certif. of Charles Hage of 3/31/08, ¶¶ 2-3.)  To the extent that Hoffman argues that Hage's deposition testimony is different than that stated in the policy application signed by Hage, this is nothing more than a contradiction that Hage will have to explain at trial.  Defendants are not bound to accept as absolute truth the deposition testimony of Hage.  As this situation makes clear, Hage's representations have already shown to be arguably inconsistent.

Hoffman's entire Rule 11 motion is premised on his own omission.  That is, Hage represented that he resided in New York.  Hoffman simply ignores this fact.  While ignorance may be bliss it has no place in a court of law.  the fact that Hage was an OB/GYN resident in Connecticut is of no real consequence since he can have more than one residence.  Clearly, defendants are entitled to rely on Hage's own signed policy application.

Since, Hage is properly to be considered a resident of New York for purposes of the policy, Hoffman's present motion must be denied.  Defendants had a good basis for asserting that Hage's residence was in New York at the time he applied for the policy. Hoffman appears to be simply frustrated because New York law may be applicable based upon, at least in part, Hage's own representation that he resided in New York.

Defendants suggest that if Hoffman wishes to assert legal argument about the significance of Hage's representation on the application, he should do so in the course of normal judicial proceedings instead of making this frivolous motion.

**B.      *Place Where the Policy Was Issued.*****

Hoffman argues that it is a fabrication that the policy was issued in New York.   Of course, in typical Hoffman style he cites no case law to support his position.  Again, Hoffman misses the black letter rule that the for purposes of determining the place of contracting is not the place where the insurer signed the policy.  With insurance, the place of contracting is the "place where the parties executed and delivered the insurance policy." *Polar Inter. Brokerage Corp. v. Investors Ins. Co. of Am.,* 967 F. Supp. 135, 141 (D.N.J. 1997).  The Third Circuit, albeit applying Pennsylvania law, has recently expressed the applicable principle that "[a]n insurance contract is made in the state where it is delivered." *Hammersmith v. TIG Insurance Co.*, 480 F.3d 220 (3d Cir. 2007); *see J.C. Penney Life Ins. Co.*, 383 F.3d 356, 361 (3d Cir. 2004) ("'An insurance contract is "made" in the state in which the last act legally necessary to bring the contract into force takes place.' . . .  'In most cases, this last act is delivery of the policy to the insured and the payment of the first premium by him.'").  There is no question that until Hage signed and paid for his first premium in New York, there was no policy.  It follows, therefore, that the policy was issued in New York.

The last acts necessary for the insurance to be placed took place in New York because before Hage signed the policy application and paid for his premium in New York there was no policy.  In the signature area of the application where Hage signed it states as follows:

> (5) The insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured and any other person to be insured under the policy remains as stated in the Application.  The only exception to this is provided in the Receipt and Conditional Insurance Agreement detached herefrom and issued if the premium is paid in advance, in accordance with section M above.

(Policy, at Application, at 6, **Exhibit 3**.)  On that same page, it indicates that Hage availed himself of the option to have the policy issued immediately by way of the "Receipt and Conditional Insuring Agreement." (*Id.*)  As noted above, the policy was signed in New York.  Since the policy became effective upon the signing of the application and payment of premium, the policy was issued and became effective in the State of New York, on June 25, 1987.  The issue date for the policy is June 25, 1987, which is the same date the policy was signed.

Aside from the application itself, in this litigation Hage has recently certified that the New York address on the policy application was placed so that the policy could be returned to Bronx, New York.  (*See* Certif. of Dr. Charles W. Hage Dated March 31, 2008, ¶2.)  By signing the application with a New York address, Hage chose New York as a place of delivery.  Notably, the policy offers a 10-day right to cancel following delivery.  (*See* Policy, at Front Page, **Exhibit 3**.)

There is no doubt, therefore, that the last act necessary to consummate coverage occurred in New York.  From viewing the policy (including the application) in any light, it would simply be impossible for any person to conclude that the policy was governed by New Jersey law since the application was signed in New York, the policy was intended to be delivered in New York, and there is no reference to the insured risk (that is, Hage) being located in New Jersey.

In light of the foregoing, there can be no doubt that the policy was issued in New York. Until Hage signed the application and paid his premium, there was no policy.  The policy was created by acts that took place in the State of New York, and therefore, that is the State where the policy was issued.  Hoffman's Rule 11 motion on this point strains credibility.  His argument at best is weak.  This Court should not tolerate Hoffman's actions, and should impose sanctions upon him.

### POINT IV

### HOFFMAN'S ARGUMENTS THAT DEFENDANTS FAILED TO CITE AN ADVERSE DECISION ARE WITHOUT MERIT BECAUSE THE SUBJECT DECISION IS NOT ADVERSE TO DEFENDANTS AND IS NOT FACTUALLY ON POINT

Hoffman appears to believe that New York jurisprudence is unequivocal in not permitting an insured to make a claim for the present value of future benefits at trial in the absence of anticipatory breach. Hoffman is largely right about that. Hoffman is wrong, however, if he believes that New Jersey law would allow him to make a claim for future benefits in the absence of anticipatory breach. It is essentially this issue relating to future benefits that is the genesis of the contentious activity in this case relating choice of law.

To place things in context, it is worth pointing out that the policy language itself would not allow a claim for future benefits because benefits accrue on a monthly basis. In other words, Hage would only be entitled to collect benefits on a *retroactive basis* upon proving his entitlement to benefits on a monthly basis. The policy provides:

> **9.6 TIME OF PAYMENT OF CLAIMS**
> After We receive satisfactory written proof of loss:
>  . . .
> b.      We will pay at the end of each 30 days any benefits due that are payable periodically – subject to continuing proof of loss.

(Policy, at 16, **Exhibit 3**.)  The policy language requires that an entitlement to benefits be proved first, and then benefits are paid based upon that proof. Moreover, periodic payments can only become payable upon "continuing proof of loss." (*Id.*) Hage wants to circumvent the policy by demanding future benefits without having to provide the proof of loss required by his policy. This Court should not grant Hage a better contract than the one he paid for.

An entitlement to benefits can only be proved upon Hage's satisfaction of contract terms. The contract terms are executory (that is, they anticipate potential future obligations based upon

future circumstances).  For Hage to possibly sustain a claim for future benefits, Hage would have

to show evidence of an anticipatory breach; in other words, show that defendants refuse to

perform under the policy regardless of Hage's circumstances.  Defendants have never taken the

position that they were unwilling to perform under the policy; rather, defendants' position has

been that Hage is not entitled to "total disability" benefits based upon the policy language when

applied to his circumstances.  However, Hage may be entitled to Residual Disability benefits but

Hage has refused to be considered for such a benefit.  Moreover, Hage continues to pay his

policy premiums, as a result, he continues to perform under the contract.  Similarly, defendant

continues to perform by accepting such premium and offering coverage via the policy.  Of

course, Hoffman ignores these facts.

Since future circumstances are speculative, they are not a proper basis upon which a jury

can make an award.  Hoffman's arguments regarding permanency are specious.  This case

centers around Hage's alleged "total disability" from his "your occupation."  Hage cannot prove

with any degree of certainty what his abilities will be in the future, what his medical condition

will be in the future, whether there will be medical advancements in the future that may

completely resolve his eye condition, whether technical advances may in the future allow him to

return to performing the duties of an OB/GYN, or whether he will die—all of which would have

a bearing on defendants' liability for benefits under the policy.  Accordingly, the policy cannot

be reasonably interpreted to provide Hage with future benefits under his circumstances.

Even though the policy language itself would prevent Hage from asserting a claim for

future damages, Hage believes that the case of *Cipala v. Lincoln Technical Institute*, 170 N.J. 45

(2004) recognizes a cause of action for future benefits in his circumstances.  In point of fact,

however, the *Cipala* case actually recognizes that an anticipatory breach (or absolute breach of the contract) is a prerequisite to asserting a claim for future benefits.

**A.      The Cipala *case is not inconsistent with defendants position that anticipatory breach is a prerequisite to sustaining a claim for future benefits.***

Hoffman argues that it was misleading and "quintessentially unreasonable" for defendants not to cite to the case of *Cipala v. Lincoln Technical Institute*, 179, N.J. 45 (2004). (*See* Brief in Supp. of 5/6/08, at 3.)[4]  This is an inaccurate position for two reasons.  First, as stated above, the policy's language would itself prevent Hage from asserting a claim for future damages.  Notably, the *Cipala* decision does not evidence policy language similar to the present case even though defendants agree with its holding regarding anticipatory breach.  Second, the *Cipala* case actually supports defendants' position that a showing of an anticipatory breach (or absolute breach of the contract) would be a prerequisite to obtaining future damages.  Hage has not made a claim of anticipatory breach, and has not pretended to do so in the motion papers.

As already noted, the *Cipala* case gives no indication of policy language analogous to Hage's policy.  Despite there not being analogous policy language, the *Cipala* court supports defendants position that Hage would not be entitled to obtain a judgment for benefits beyond the date of verdict in the event he wins at trial.  The *Cipala* court explicitly relied upon *Stopford v. Boonton Molding Co.*, 56 N.J. 169 (1970), which involved an employee suing "his employer for damages resulting from the **anticipatory breach of a contract** providing for a lifetime pension." *Cipala*, 179 N.J. at 50 (emphasis added).  The *Cipala* court recognized that there was a

---

[4]      Hoffman's motion papers do not indicate where Hoffman would have thought it appropriate for defendants to cite to the *Cipala* case.

distinction to be made when an anticipatory breach claim was being made.  Hage has not set

forth a claim of anticipatory breach.

Notably, as if crafted for the present case, the *Cipala* case states:

> Because defendant is obligated to pay only during plaintiff's disability . . .
> plaintiff is entitled merely to a judgment for specific performance and may
> not recover the present value of future benefits.
>       . . .
> Because future damages cannot be determined with reasonable certainty,
> plaintiff's efforts to obtain a judgment in the amount of future damages
> must fail.  *See, e.g., Finley v. St. John's Mercy Med. Ctr.*, 958 *S.W.*2d 593,
> 595-96 (Mo.Ct.App.1998) (concluding future damages incalculable when
> duration of plaintiff's disability unknown).

*Id.* at 51-52. [5]   As is evident by a reading of the *Cipala* case upon which Hoffman places so

much stress, that case is also consistent with New York jurisprudence which would bar Hage

from making a claim for future benefits under these circumstances.  *See MaGee v. Paul Revere*

*Life Ins. Co.*, 954 F. Supp. 582, 585 (E.D.N.Y. 1997); *Wurm v. Commercial Ins. Co.*, 308 A.D.2d

324, 766 N.Y.S.2d 8  (1st Dep't 2003); *Romar v. Ali,* 120 A.D.2d 421, 501 N.Y.S.2d 878 (1st

Dep't 1986).

Defendants did not have any obligation to cite to the *Cipala* case at any time in this civil

action.  The *Cipala* case is distinguishable on its facts, and, to the extent it is relevant, actually

supports defendants position that anticipatory breach is a prerequisite to a claim for future

damages. Simply, Hage cannot make a claim for future benefits in the absence of an anticipatory

breach under either New York or New Jersey law.  Hage's complaint does not set forth a claim

for anticipatory breach, and the facts of this case would not support such a claim.  For

---

[5]      For a discussion of the application of the anticipatory breach doctrine in New Jersey,
defendants also refer the Court generally to the case of *Mack v. Revicki*, 47 N.J. Super. 185, 193-
194 (App. Div. 1957) (stating that "[t]o allow judgment for the full amount at once would in
effect be penalizing him [the defendant] for a breach beyond compensating [the] plaintiff for

anticipatory breach to exist, defendants would have had to completely repudiated the policy, which has never occurred, as is evidenced by the fact that defendants offered to evaluate Hage's claim under the residual disability provisions of the policy and defendants continue to accept premiums from Hage.  Hage is apparently not interested in "residual disability" benefits.  In fact, during a July 29, 2005 hearing before this court counsel for plaintiff was specifically asked to amend the complaint to add a residual claim.  (*See* Court Hearing of 7/29/2005, at T18:15-22 **Exhibit 6.**)  Hage and defendants have had a continuous contractual relationship, and, therefore, there has not been a repudiation, which would be the predicate for a claim of anticipatory breach.

New York and New Jersey law (to the extent that *Cipala* is representative of New Jersey law) do not conflict with regard to the prerequisite of an anticipatory breach for the establishment of a prima facie claim for future damages. Since the two states do not conflict with regard to this issue, no choice of law needs to be made and Hoffman's position in this motion is specious.


**B.      Defendants reliance upon the Lauro case was justified.**

In the motion papers, Hoffman complains that defendants have relied upon  *Lauro v. Metropolitan Life Ins. Co.*, 80 F. Supp. 377 (D.N.J. 1948) instead of *Cipala*.  (*See* Certif. of David Hoffman, Esq. of 5/6/08, ¶ 3(C).)  The *Cipala* case, however, is completely consistent with *Lauro*.

In *Lauro,* the court was presented with a motion seeking that the complaint be stricken for failure to state a claim.  *See Lauro*, 80 F. Supp. at 377.  The case involved an insurance

what he is presently entitled to under the agreement," where the plaintiff had fully performed under the contract, but the contract contemplated payments in installments).

policy that insured against total and permanent disability that prevented the insured from performing work or engaging "in any business for compensation or profit." *Id.* Upon proof triggering coverage, the insurance company was to "pay each month, during the continuance of such disability to insured." *Id.* In *Lauro*, the insurance company paid total disability benefits for a time and then stopped upon its determination that the plaintiff was no longer totally disabled. *See id.* at 377-78. As a result of the circumstances, the plaintiff claimed the insurance company's actions constituted a "breach of the entire contract of insurance, and amounted to an anticipatory breach." *Id.* at 378. "Upon this premise," the plaintiff sued for damages that were based on mortality tables. *See id.*

The insurance company's attorneys in *Lauro* argued that there was not a breach of the entire contract because the only thing being disclaimed by the insurance company was "its liability to continue the total disability payments," but that the policy continued to be in force. *Id.* The court agreed that a breach of the entire contract had not taken place. Because the amount at issue fell below the jurisdiction of the court, the motion to dismiss was granted. *See id.*.

As can be seen from the foregoing, *Lauro* is completely consistent with *Cipala* in that they both recognize New Jersey law as requiring anticipatory breach as a prerequisite to asserting a claim for future damages. By not citing the *Cipala* case prior to Hoffman in this civil action, defendants have not engaged in any sanctionable conduct for purposes of Rule 11. Even if the two cases were inconsistent with regard to their view of claims for future damages, there is no evidence that defendants have behaved in an objectively unreasonable way by not citing to *Cipala* before Hoffman cited to it.

28

## POINT V

## IN THE ALTERNATIVE, THIS COURT SHOULD CONSIDER SANCTIONING PLAINTIFF PURSUANT TO 28 U.S.C. § 1927

Hoffman should be held liable for the excessive costs he has caused by virtue of his insistence on pressing accusations without any basis.  Title 28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  This frivolous motion by Hoffman is not the first instance of his unreasonable multiplication of the proceedings in this case.  During the course of this litigation Hoffman has consistently ignored the Federal Rules of Civil Procedure and misconstrued Court orders.  By way of illustration, Hoffman and defense counsel have participated in numerous phone conferences with Judge Bongiovanni wherein she denied several of Hoffman's outlandish discovery requests.  Hoffman's discovery requests were then denied again on January 5, 2006, by formal Order of the Court.  Undaunted, Hoffman sought the same discovery which culminated in another Order by the Court denying your requests on September 19, 2006.  Despite Rule Fed. R. Civ. P. 78, requiring that Hoffman appeal a magistrate's ruling within 10 days, Hoffman waited 6 months to file said appeal.  The appeal was summarily denied on January 24, 2007.  In addition, Hoffman also attempted to include witnesses and documents in the initial Pre-Trial Order that he have never produced or identified during discovery.  To that end, Judge Bongiovanni dismissed Hoffman's attempts to by-pass the rules of this Court.  The aforementioned is illustrative of the unprofessional techniques and practices Hoffman has employed throughout this litigation.  Moreover, it exemplifies Hoffman's contempt for the rules

29

of this Court.  In light of Hoffman's actions, this Court should award defendants the full measure of relief allowable under 28 U.S.C. § 1927.

PHLDMS1 4285159v.2

## CONCLUSION

In light of the foregoing, defendants respectfully request that this Court enter an order:

(1) denying plaintiff's and/or plaintiff's attorneys motion for sanctions pursuant to Fed. R. Civ. P. 11;

(2) awarding defendants reasonable expenses, including attorney's fees, incurred to oppose the motion, pursuant to Fed. R. Civ. P. 11, to be paid by plaintiff and/or plaintiff's attorneys; and

(3) awarding defendants excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct, pursuant to 28 U.S.C. § 1927, to be paid by plaintiff and/or plaintiff's attorneys.


Date:  May 19, 2008                          Respectfully submitted,

                                             By:  s/ Andrew I. Hamelsky_____
                                                  Andrew I. Hamelsky, Esq. (AH-6643)
                                                  White and Williams LLP
                                                  The Atrium, East 80 Route 4
                                                  Paramus, New Jersey 07652
                                                  Phone: 201-368-7200
                                                  Fax: 201-368-7246
                                                  E-mail: hamelskya@whiteandwilliams.com
                                                  *Attorneys for defendants UnumProvident*
                                                  *Corporation and The Paul Revere Life Insurance*
                                                  *Company*

PHLDMS1 4285159v.2