**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                   :
CHARLES W. HAGE,                   :
                                   :
       Plaintiff,                  :    CIVIL ACTION NO. 04-5933 (MLC)
                                   :
       v.                          :    MEMORANDUM OPINION
                                   :
UNUMPROVIDENT                      :
CORPORATION, et al.,               :
                                   :
       Defendants.                 :
_____:
```

**COOPER, District Judge**

Plaintiff – Dr. Charles W. Hage – alleges, inter alia, that
Defendants – UnumProvident Corporation ("UnumProvident") and The
Paul Revere Life Insurance Company ("Paul Revere," collectively
"Defendants") – breached his disability insurance contract.
(See dkt. entry no. 1.)  The parties filed in limine motions with
respect to the initial breach of contract phase ("Phase One") of
the bifurcated trial.  (Dkt. entry nos. 97, 99.)  This Court
previously granted the respective motions in limine in part and
denied without prejudice in part.  (Dkt. entry no. 116, 8-7-08
Order.)  In particular, the relevant Order stated that "[t]he
Court will issue a written opinion on the issue of choice of law
(New York or New Jersey) for interpreting the insurance policy in
issue, and the related issue whether plaintiff may present
evidence in support of a claim for a lump sum award of future
insurance benefits."  (Id. at 3.)  Furthermore, "the Court will
decide whether to admit testimony of plaintiff's proposed medical

expert, Phillip J. Calenda, based upon the foregoing written opinion." (Id.)  This Memorandum Opinion represents the "written opinion" contemplated by the Court's earlier Order.

For the reasons stated herein, the Court:  (1) finds that New Jersey law applies to this current matter because of the absence of an actual conflict between the laws of New York and New Jersey with respect to the interpretation of the insurance policy and the related issue of whether a plaintiff may recover a lump sum award for future insurance benefits; (2) bars Hage from presenting evidence in support of his claim for a lump sum award of future insurance benefits; and (3) specifically finds inadmissible Calenda's proposed testimony concerning the permanency of Hage's disability as well as the proposed testimony of Joseph S. Rosamilia regarding the present value of future insurance benefits.

**BACKGROUND**

**I.   The Policy**

Hage signed an application for a disability insurance policy from Paul Revere on June 25, 1987.  (Dkt. entry no. 97, 3-31-08 Hage Certif. ¶ 1.)  The application listed a Bronx, New York address as his "Residence," and it further indicated that he had resided at this address for 27 years.  (Dkt. entry no. 109, 5-6-08 Hoffman Certif., Ex. A, Policy Application ("Application") at 1.)  The Application also stated that it was "signed at NY." (Id. at 6.)

2

Hage asserted in his Certification that the Bronx address "was where I grew up and my parents still lived." (3-31-08 Hage Certif. ¶ 2.) "My father [Thomas Hage], now 85, was an insurance agent and apparently filled out the Policy Application using the 'family address' so that the Policy would be returned to him for safe-keeping." (Id.)

The Application also showed that Hage worked as an OB-GYN physician at "Bridgeport Hospital" and accordingly included a Bridgeport, Connecticut "Business Address." (Application at 1.) Hage testified at his Deposition that he lived and worked in Connecticut at the time he applied for insurance and that his father simply used "the family address." (3-31-08 Hage Certif. ¶ 2.) According to his Certification, Hage had been working at Bridgeport Hospital for two years while residing in a nearby apartment. (Id. ¶ 3.) He asserted that, because he was working 100 hours a week as a medical resident, he "could not have commuted to New York if I had wanted to do so." (Id.) Before working at Bridgeport Hospital, Hage lived in Rhode Island while attending Brown University Medical School. (Id. ¶ 4.)

It appears that Hage made an initial payment to his father at the same time he signed the Application. According to Section M of the Application entitled "Premium Information," the agent collected $156.85 "in exchange for Receipt and Conditional Insuring Agreement." (Agreement at 6.) The final page of the Application confirmed a premium payment of $156.85. (Id. at 7.)

3

The Application specified that "[t]he Insurance applied for will not take effect unless the issuance and delivery of the policy and payment of the first premium occur while the health of the Proposed Insured and any other person to be insured under the policy remains as stated in the Application." (Id. at 6.) "The only exception to this is provided in the Receipt and Conditional Insuring Agreement detached herefrom and issued if the premium is paid in advance, in accordance with Section M above." (Id.)

Following receipt of the Application, the underwriting process commenced at Paul Revere's headquarters in Worcester, Massachusetts. In particular, a Paul Revere employee interviewed Hage by telephone, and the notes for this interview stated that Hage's personal physician also worked at Bridgeport Hospital. (Dkt. entry no. 97, 3-31-08 Hoffman Certif., Ex. at 6-7, Personal History Interview; see also 3-31-08 Hage Certif. ¶ 5.)

Hage received from his father the issued Policy Documents as well as a "specialty" letter dated August 20, 1987. The correspondence was evidently mailed from Worcester, Massachusetts to the Bronx, New York address provided on the Application. (3-31-08 Hoffman Certif., Ex. at 5, 8-20-87 Letter.) The letter welcomed Hage as a policyholder and offered a clarification of "what we mean in your policy by 'Your Occupation.'" (Id.) In addition, the Policy Documents identified June 25, 1987 as the "Date of Issue" and were "Signed for Us [Paul Revere] at

4

Worcester, Massachusetts."  (3-31-08 Hoffman Certif., Exs. at 1-4

("Policy Documents").)  Paul Revere's "Assembly Instructions" for

Hage's Policy was also dated August 20, 1987, and it expressly

referred to "STATE: NY."  (3-31-08 Hoffman Certif., Ex. at 8,

Assembly Instructions.)

Hage's Application was expressly incorporated into the

Policy.  (Policy Documents at 1; dkt. entry no. 99, Defs. Omnibus

Mot. In Limine, Ex. 1, Policy ("Policy") at Part 1.1.[1])  Although

lacking an express choice of law (or choice of forum) provision,

the Policy did contain several references to the State of New

York.  Part 2.2 of the Policy, governing the "Residual Disability

Benefit," authorized Paul Revere to adopt another CPI ("Consumer

Price Index") in certain circumstances, provided that the new

index "is acceptable to the New York Superintendent of

Insurance."  (Policy at Part 2.2.)  Part 10.3 stated:

**10.3      CONFORMITY WITH STATE STATUTES**

Any provision in this Policy which, on its Date of
Issue, conflicts with the laws of the state in which
You reside on that date is amended to meet the minimum
requirements of such laws.

(Id. at Part 10.3)  Two "required disclosure statements" further

specified that the Policy "does NOT provide basic hospital, basic

---

[1] According to Hage, Defendants failed to retain the
original copy of the issued Policy and therefore submitted "a
'Policy' which is not a copy of the original."  (Dkt. entry no.
113, Pl. Letter Reply Br. at 3.)  Nevertheless, Hage does not
appear to claim that the submitted copy differed materially from
the issued Policy.

medical or major medical insurance as defined by the New York State Insurance Department." (Defs. Omnibus Mot. <u>In</u> <u>Limine</u>, Ex. 1, Required Disclosure Stmt. Policy Form 960f at 1; <u>id.</u>, Required Disclosure Stmt. Rider Form H771R at 1.)

Hage moved to New Jersey following the issuance of the Policy and the completion of his medical residency at Bridgeport Hospital. (3-31-08 Hage Certif. ¶ 6.)  It is undisputed that he continues to reside in New Jersey.  In particular, he practiced as an obstetrician and gynecologist in New Jersey and also worked as a "physician advisor." (Dkt. entry no. 92, Final Pretrial Order ("PTO") at 4, 7, 9-13, 17.)

**II.  Claim for Disability Benefits**

Hage submitted a claim for disability benefits in August 2002 because of a severe loss of stereopsis (fine binocular vision) in his eyes.  (PTO at 4.)  The "Total Disability Benefit" provision of the Policy provided that:

**2.1  Total Disability Benefit**

We will periodically pay a Total Disability benefit during Your Total Disability.  The monthly amount We will pay is the Maximum Monthly Amount.  It is shown on the Policy Schedule.

This benefit will begin on the Commencement Date.  We will continue to pay while You remain Totally Disabled. But in no event will We pay beyond the Maximum Benefit Period.  For periods of less than a month, we will pay 1/30th of the benefit for each day of Disability.

(Policy at Part 2.1.)  The Policy specified that Paul Revere would, upon receipt of satisfactory written proof, "pay at the

6

end of each 30 days any benefits due that are payable periodically – subject to continuing proof of loss." (Id. at Part 9.6(b).) "Total Disability" was defined as:

> "Total Disability" means that because of Injury or Sickness:
> a. You are unable to perform the important duties of Your Occupation; and
> b.  You are under the regular and personal care of a Physician.

(Id. at Part 1.9.)  The Policy further defined "Your Occupation" as "the occupation in which You are regularly engaged at the time You become Disabled."  (Id. at Part 1.8.)

Paul Revere began paying "Total Disability" benefits in October 2002.  (PTO at 5.)  But it stopped in January 2003 "on the sole grounds that [Hage] had been working at an occupation in addition to obstetrics-gynecology at the time of his Claim." (Id.)  Hage pursued his administrative remedies, but Paul Revere allegedly "confirmed its termination of his benefits by making the totally specious claim that he was engaged in a 'dual occupation' when he filed his disability claim." (Dkt. entry no. 7, First Am. Compl. ¶ 23.)  Nevertheless, it appears uncontested that Hage has continued to pay his premiums, even though the Policy itself waived payment after 90 days of disability.  (See Policy at Part 5.1.)

### III. The Present Litigation

Hage filed a complaint in New Jersey state court on October 4, 2004, naming as defendants both UnumProvident and Paul Revere.

7

(Dkt. entry no. 1, Rmv. Not., Ex. 1, Compl.)  Paul Revere is now a subsidiary of UnumProvident, although this evidently was not the case in 1987 when Hage applied for and obtained his Policy. (PTO at 4.)  Defendants responded by removing the action to this Court on December 1, 2004, based on the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Rmv. Not. ¶ 3.)  Hage "is and was at the time of the institution of this action, and now at the time of removal, a citizen and resident of the State of New Jersey."  (Id. ¶ 4; PTO at 2.)  On the other hand, UnumProvident is a Delaware corporation with principal places of business in Tennessee and Maine, and Paul Revere is a corporation incorporated in Massachusetts with its principal place of business in Massachusetts.  (Rmv. Not. ¶¶ 5-6; PTO at 2.)

Hage then filed a First Amended Complaint, in which he advanced four separate causes of action:  (1) breach of contract; (2) treble damages for violation of the New Jersey Consumer Fraud Act; (3) punitive damages for fraud and wanton and willful disregard of his rights; and (4) violation of both the federal and New Jersey RICO statutes.  (First Am. Compl. ¶¶ 19-39.)  He specifically alleged that Defendants engaged in such bad faith practices as "post-claim underwriting" as well as "unfair claim handling" and that their proffered rationale for terminating insurance benefits lacked a fairly debatable basis.  (First Am. Compl. ¶¶ 21, 23, 25.)  In the respective "Wherefore" clauses for

8

his four claims, Hage requested, <u>inter alia</u>, an order directing the payment of future disability benefits due to him pursuant to the terms of the Policy.  (<u>Id.</u> at 15-17, 27.)

The parties eventually sought summary judgment.  (Dkt. entry nos. 51, 57.)  Defendants expressly raised the question of choice of law in their summary judgment brief filed on October 26, 2006.  (Dkt. entry no. 59, Defs. Summ. J. Br.; dkt. entry no. 102, Defs. Br. in Opp'n to Pl. <u>In Limine</u> Mot. ("Defs. Opp'n Br."), Ex. 2, Excerpt from Summ. J. Br.)  They pointed out that Hage resided in New York at the time the Policy was issued, but was a resident of New Jersey when he submitted his benefits claim.  (Defs. Summ. J. Br. at 24.)  Defendants asserted that no conflict analysis was necessary because New Jersey and New York follow similar approaches to the issue of contract interpretation.  (<u>Id.</u> at 24-26.)  While agreeing "that choice of law has not been and is not now a significant issue," Hage responded in his brief that New Jersey law should apply because New Jersey was the forum and "Plaintiff has resided in New Jersey since shortly after the Policy was issued in 1987, paying premiums from activities in New Jersey which are now essentially the subject of this lawsuit." (Defs. Opp'n Br., Ex. 3, Pl. Br. in Resp. to Defs. Mot. for Summ. J. under Rule 56 at 13-14.)

This Court disposed of the summary judgment motion and cross motion in a January 29, 2007 order.  (Dkt. entry no. 73, 1-29-07

Order.)  While not expressly addressing any choice of law issues, the Court implicitly applied New Jersey law to the matter of contractual interpretation.  (Id. at 2-5.)  It found the existence of ambiguity because of its inability to discern "whether the definition of 'occupation' includes all occupations or positions Plaintiff was regularly engaged in at the time he applied for disability (i.e., obstetrician-gynecologist and physician advisor), or rather is limited to the occupation for which plaintiff applied for insurance coverage and was regularly engaged in at the time he applied for disability (i.e., obstetrician-gynecologist)."  (Id. at 3.)  Accordingly, the summary judgment motion and cross motion were denied without prejudice.  (Id. at 6.)  The Court then denied Defendants' motion for reconsideration, or, in the alternative, for certification pursuant to 28 U.S.C. § 1292(b).  (Dkt. entry no. 84, 7-17-07 Order.)

The Magistrate Judge granted Defendants' informal motion to bifurcate the trial of the breach of contract claim (or Phase One) from the other extra-contractual claims in an order entered on October 22, 2007.  (Dkt. entry no. 90, 10-22-07 Order at 1-4.) A Final Pretrial Order was then filed on December 28, 2007 regarding Phase One of the trial (dkt. entry no. 92), which was then amended on January 16, 2008 (dkt. entry no. 94).  Among other things, the Final Pretrial Order listed three legal issues for trial:

## 11.  PLAINTIFF'S LEGAL ISSUES.

Given that the Court in its decision and Order filed as Document 73 on 1/29/2007 has ruled that liability hinges on the construction of the term "your occupation" as it appears in the insurance contract (Policy), and given that the Court has ruled that an ambiguity exists as to the construction of that term; should the Court further rule that the ambiguity should be decided in favor of the insured or should the Court rule that resolution of the ambiguity is for the jury with an appropriate instruction to the effect that ambiguities in insurance contracts are to be decided in favor of the insured?

## 12.  DEFENDANTS' LEGAL ISSUES

A.  Defendants submit that as a matter of law plaintiff cannot seek future damages.

B.  Defendants submit that plaintiff cannot be totally disabled under the Policy as he continues to perform the important duties of his "your occupation."

(PTO at 26.)  Furthermore, the Final Pretrial Order listed the witnesses that the parties intended to call at trial.  (Id. at 18-24.)  Hage intended to call Calenda as an expert witness. (Id. at 19, 23.)  He also wished to call Rosamilia, who is an accountant, to testify about the present value of both his unpaid and future insurance benefits under the Policy.  (Id. at 8, 19, 23, 27.)  Defendants objected to both witnesses.  (Id. at 19, 23, 27.)  The Final Pretrial Order also noted a dispute between the parties over whether New Jersey or New York law applied.  (Id. at 26-27.)

The Final Pretrial Order expressly contemplated the filing of in limine motions by the parties.  (Id. at 2-3.)  Hage and

11

Defendants filed their respective motions in limine on April 4, 2008 and April 7, 2008.  (Dkt. entry nos. 97, 99.)  Hage sought, inter alia, an order declaring that: (1) his First Amended Complaint as filed sought future benefits as damages, or, in the alternative, granting him leave to file an amended pleading specifically demanding such damages; (2) the substantive law of New Jersey shall continue to be applied in the current proceeding; (3) pursuant to the New Jersey Supreme Court's ruling in Cipala v. Lincoln Technical Institute, 843 A.2d 1069 (N.J. 2004), future damages under the contract be awarded providing that he proves to the trier of fact that Defendants breached the contract and that his disability is permanent; and (4) the legal and factual issues as well as the evidence and testimony at Phase One of the trial be limited to, among other things, the extent, nature, and permanency of his disability.  (Dkt. entry no. 97, First Mot. In Limine & for Other Relief, Attached Schedule at 1-2.)  Defendants requested, among other things, that the Court enter an order excluding testimony or evidence relating to future benefits or the present value of the Policy.  (Defs. Omnibus Mot. at 30.)  According to Defendants, exclusion is mandated by the law of either New Jersey or New York, which applies here pursuant to New Jersey's choice of law analysis.  (Id. at 10-15.)

The parties extensively briefed their respective motions. (See Dkt. entry 98, Pl. In Limine Mem. of Law ("Pl. In Limine

12

Mem."); Defs. Omnibus Mot. In Limine; dkt. entry no. 101, Pl.
Mem. of Law in Resp. to Defs. In Limine Mot. ("Pl. Resp. Mem.");
Defs. Opp'n Br.)  Hage also moved to require a Federal Rule of
Civil Procedure ("Rule") 36 response to requests for admissions
or to extend the time for discovery.  (Dkt. entry no. 103.)
Defendants opposed this discovery motion, and Hage filed a reply.
(Dkt. entry nos. 111, 114.)  Finally, Hage moved for sanctions
pursuant to Rule 11.  (Dkt. entry no. 106.)  According to his
motion, defense counsel violated (1) Rule 11(b)(2) by fabricating
facts with respect to where the Policy itself was issued as well
as Hage's residency, and (2) Rule 11(b)(3) by failing to cite
Cipala.  (Dkt. entry no. 108, Br. in Support of Rule 11 Sanctions
("Pl. Rule 11 Br.") at 3-4.)  Defendants opposed the Rule 11
motion (dkt. entry no. 112, Defs. Br. in Opp'n to Pl. Counsel's
Mot. for Sanctions & Defs. Request to the Ct. that Sanctions be
Imposed Upon Pl.'s Counsel ("Defs. Sanctions Br.")), and Hage
responded by filing a letter reply brief in further support of
his motion.  (Pl. Letter Reply Br.)

   This Court held a hearing on August 6, 2008, to address the
pending motions.[2]  (Dkt. entry no. 115.)  On the next day, the

---

   [2]  Hage also submitted two notices of new development prior
to the hearing.  The first notice concerned a law review article
by Professor John H. Langbein entitled "Trust Law as Regulatory
Law:  The UNUM/Provident Scandal and Judicial Review of Benefits
Denials under ERISA," and the second notice addressed a recent
United States Supreme Court case citing this article.  (Dkt.
entry nos. 110, 115.)

Court entered an Order granting in part and denying without prejudice the respective motions in limine.  (8-7-08 Order.)  In particular, the Order stated that:

> (3) The Court will issue a written opinion on the issue of choice of law (New York or New Jersey) for interpreting the insurance policy in issue, and the related issue whether plaintiff may present evidence in support of a claim for a lump sum award of future insurance benefits; and
> (4) The Court will decide whether to admit testimony of plaintiff's proposed medical expert, Phillip J. Calenda, based upon the foregoing written opinion[.]

(Id. at 3-4.)  The Court further directed the Clerk to designate Hage's Rule 36 and Rule 11 motions as terminated because they had been withdrawn.  (Id. at 4.)  Since its August 7, 2008, ruling, the Court has received a supplemental letter submission from Hage dated August 27, 2008, as well as a letter in response from Defendants dated September 4, 2008.

## DISCUSSION

### I.   Choice of Law Principles

A district court hearing a diversity matter must apply the law of the forum state, including its choice of law doctrine. See, e.g., Woessner v. Air Liquide Inc., 242 F.3d 469, 472 (3d Cir. 2001).[3]  Thus, we must apply New Jersey's choice of law rules.

_____

[3]  The Court must predict how the New Jersey Supreme Court would resolve any issue of New Jersey law.  See Boyanowski v. Capital Area Intermediate Unit, 215 F.3d 396, 406 (3d Cir. 2000). The Court considers decisions of the New Jersey Supreme Court, the New Jersey Appellate Division, the federal courts interpreting New Jersey law, and other jurisdictions addressing the same issues.  See id.

New Jersey's approach consists of two steps, and it requires the Court to conduct its analysis on an issue-by-issue basis. See, e.g., Rowe v. Hoffman-LaRoche, Inc., 917 A.2d 767, 771 (N.J. 2007).  The Court first must determine whether an actual conflict exists between the laws of the interested states with respect to a particular issue.  See, e.g., id.  There is no actual conflict (a "false conflict") if the laws of the interested states would produce the same result on the specific issue presented.  See, e.g., Williams v. Stone, 109 F.3d 890, 893 (3d Cir. 1997).  If there is no actual conflict as to a particular issue, the Court is to avoid the choice of law question and apply New Jersey law to that issue.  See, e.g., Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006); Williams, 109 F.3d at 893.

If the Court determines an actual conflict exists as to a particular issue, then the second step requires the Court to: (1) identify the governmental policies underlying the law of each state; (2) determine whether those policies are affected by each state's contacts to the litigation and to the parties; and then (3) apply the law of the state with the greatest interest in governing the particular issue.  See, e.g., Rowe, 917 A.2d at 771.

The "general rule in contract actions is that the law of the state with the most significant relationship to the parties and the transaction under [certain] principles . . . governs."  Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 629 A.2d 885,

15

888 (N.J. 1993).  These "principles" are:  (1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability, and uniformity of result; and (7) ease in the determination and application of the law to be applied.  Id. at 888 (citing State Farm Mut. Auto. Ins. Co. v. Estate of Simmons, 417 A.2d 488, 491 (N.J. 1980)).  The Court must consider "several relevant 'contacts,' according to their relative importance . . . such as the domicile, residence, nationality, place of incorporation and place of business of the parties, and the places of contracting and performance."  Id.

The "principal location of the insured risk" in casualty insurance cases must be emphasized.  Id. at 893; see, e.g., NL Indus., Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 320 (3d Cir. 1995).  The "court should apply the law of the state that 'the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties.'"  Gilbert Spruance Ins. Co., 629 A.2d at 889 (quoting State Farm, 417 A.2d at 491).  Nevertheless,

16

the risk's specific location carries less significance when it is
moveable or the insurance policy covers risks scattered
throughout two or more states.  See, e.g., id. at 889, 893.

Defendants emphasize the place of contracting as a crucial
consideration in the choice of law analysis.  (Defs. Omnibus Mot.
In Limine at 11; Defs Opp'n Br. at 8-17; Defs. Sanctions Br. at
14-22.)  As Hage points out, the New Jersey Supreme Court has
rejected the old lex loci contractus rule.  (Pl. In Limine Mem.
at 6-7; Pl. Resp. Mem. at 2-4.)  See, e.g., Gilbert Spruance Ins.
Co., 629 A.2d at 888.  But the law of the place of the contract
still "'generally comport[s] with the reasonable expectations of
the parties concerning the principal situs of the insured risk.'"
Id. (quoting State Farm, 417 A.2d at 492).  Thus, that law should
apply "'unless the dominant and significant relationship of
another state to the parties and the underlying issue dictates
that this basic rule should yield.'"  Id. (quoting same); see,
e.g., NL Indus., Inc., 65 F.3d at 319 ("Thus, under New Jersey
choice of law rules, the law of the place of contracting should
ordinarily be applied unless some other state has the 'dominant
relationship' with the parties and issues.")  The place of
contracting is the place where the parties executed and delivered
the policy.  See, e.g., id. at 320 n.4.

Defendants contend that this Court should use New York law
because New York was the place of contracting.  They allege that

17

the Policy was contracted in New York because:  (1) Hage provided a New York residential address on his Application; (2) he signed the Application in New York; (3) he made his first premium payment in New York at the same time he signed the Application and entered a conditional insuring agreement; and (4) the Policy was delivered and therefore issued in New York.  (Defs. Omnibus Mot. In Limine at 11; Defs. Opp'n Br. at 8-17; Defs. Sanctions Br. at 14-22.)  Hage, however, contends that New Jersey law should apply (or at least that New York law should not), pointing out that: (1) he has lived and worked in New Jersey since shortly after he obtained the Policy; (2) he actually lived and worked in Bridgeport, Connecticut at the time of his Application; (3) the underwriting process occurred at Paul Revere's headquarters in Worcester, Massachusetts; and (4) the Policy was signed and issued by Paul Revere in Worcester.  (Pl. In Limine Mem. at 2-8; Pl. Resp. Mem. at 1-4; Pl. Rule 11 Br. at 2-4; Pl. Letter Reply Br. at 1-3.)  He further asserts that Defendants should be barred from arguing for the application of New York law pursuant to the doctrines of laches and estoppel.  (Pl. In Limine Mem. at 7-8.)

Nevertheless, the Court need not conduct the full conflicts analysis because it agrees with Defendants that the laws of both New York and New Jersey preclude a lump sum award for future insurance benefits under the doctrine of anticipatory breach.

Thus, the motions filed by the parties raise a purely "false conflict," and this Court must apply the law of New Jersey.[4]

## II.  Anticipatory Breach

Defendants contend at some length that there is no actual conflict between the laws of New York and New Jersey insofar as both states preclude a lump sum award for future insurance benefits in the absence of an anticipatory breach of the insurance policy.  (Defs. Omnibus Mot. In Limine at 10-15; Defs. Opp'n Br. at 3-7; Defs. Sanctions Br. at 23-28.)  For his part, Hage does not seriously dispute that a lump sum award is barred under New York's version of the anticipatory breach doctrine, although he does attack the state's theory as inconsistent with

---

[4]  Neither Defendants nor Hage identify any other issue involving a possible conflict between the laws of New Jersey and New York.  Although not mentioned by the parties themselves,  New Jersey and New York do appear to differ as to whether extrinsic evidence may be considered in deciding contractual ambiguity. New York law requires the Court to determine whether ambiguity exists by "looking within the four corners of the document, not to outside sources."  See Kass v. Kass, 91 N.Y.2d 554, 566 (1998) (citation omitted).  New Jersey law, on the other hand, permits the Court to consider extrinsic evidence as part of the ambiguity inquiry.  See Am. Cyanamid Co. v. Fermenta Animal Health Co., 54 F.3d 177, 181 (3d Cir. 1995).  However, under either state's law, the Court is to consider the contract as a whole as well as the circumstances surrounding the contract's formation.  See id.; Kass, 91 N.Y.2d at 566.  Furthermore, the Court in this case found ambiguity with respect to the meaning of "occupation" based, at least in part, on the language of the Policy itself. (1-29-07 Order at 3-4.)  Accordingly, any difference between the laws regarding ambiguity presents, at best, a false conflict.

"basic and consensually accepted canons of contract law." (Pl. Rule 11 Br. at 1.)  Under New York law:

> Generally, an insured who sues its insurer for failure to pay benefits under a policy may only recover benefits that have already accrued.  However, there is a narrow exception to this rule which provides for recovery of future benefits where the insurer has repudiated the entire policy.  This exception is applicable only where a plaintiff establishes that the insurer has committed an anticipatory breach by "disclaim[ing] the intention or the duty to shape its conduct in accordance with the provisions of the contract."  Repudiation occurs when the insurer completely abrogates any "obligation [ever] to make monthly disability payments, as when the insurer refuses to make further payments under the disability provisions of a life policy no matter what proof of disability is given the insurer."

Wurm v. Commercial Ins. Co., 308 A.D.2d 324, 327-28 (N.Y. App. Div. 1st Dep't 2003) (citations omitted), lv. to appeal denied, 3 N.Y.3d 602 (2004).  But Hage does assert that New Jersey no longer follows this allegedly arcane approach to damages. (Pl. In Limine Mem. at 8; Pl. Resp. Mem. at 4-5; Pl. Rule 11 Br. at 2-4; Pl. Letter Reply Br. at 3-4.)  He relies on the New Jersey Supreme Court's recent ruling in Cipala to contend that future insurance benefits may be awarded in a lump sum so long as the insured shows that his or her injury is permanent. (Id.)  He further appears to suggest that any breach must be considered "anticipatory" if it involves future performance under the contract itself. (Pl. Letter Reply Br. at 4.)  After considering the parties' various arguments, this Court concludes that New Jersey law, as the law of New York, does in fact require a

20

finding of anticipatory breach as a prerequisite for a lump sum award of future insurance benefits.

The plaintiff in Cipala had been informed by the defendant, her employer, that she would receive long-term disability insurance as part of her benefits package. Cipala, 843 A.2d at 1071. Following a knee injury, she sought disability benefits under the employer's insurance plan, but the employer informed her that she was not covered by the policy. Id. The jury ultimately concluded that the employer "breached [the employment] contract with plaintiff by failing to provide long-term disability benefits pursuant to defendant's insurance plan." Id. The trial court denied plaintiff's request for an annuity or lump sum damages for future benefits but granted specific performance of the obligation to pay future benefits and ordered the employer to set up a trust for such benefits. Id. at 1071-72. The Appellate Division affirmed the judgment of specific performance and the rejection of plaintiff's lump sum claim but overturned the trust remedy. Id. at 1072. In turn, the Supreme Court agreed with the Appellate Division's ruling regarding a lump sum award for future benefits, expressly "hold[ing] that plaintiff is entitled to a judgment for specific performance, but she may not recover lump sum damages for the present value of future disability payments because her disability was not shown to be permanent." Id. at 1074. However, it did disagree with the

21

Appellate Division regarding the propriety of the trial court's
trust remedy, largely because the defendant itself was not an
insurance company.  Id. at 1074-75.

Hage focuses on the lump sum discussion in Cipala and
especially the notion of permanency of injury.  After summarizing
the Appellate Division's decision in some detail, the New Jersey
Supreme Court stated that:

> We are in complete accord with the view expressed by the
> Appellate Division regarding that issue.  The crucial
> factor present here and not present in Stopford, is
> that plaintiff's benefits will end if she recovers from
> her disabilities or dies before reaching age sixty-
> five.  Plaintiff failed to show that her disability is
> permanent.  Thus, she has not fulfilled the condition
> precedent that would entitle her to a lump sum payment.
> Because future damages cannot be determined with
> reasonable certainty, plaintiff's efforts to obtain a
> judgment in the amount of future damages must fail.

Id. at 1073 (citation omitted).  According to Hage, Cipala
established that "[t]he key to future damages is proof of
permanency."  (Pl. In Limine Mem. at 8.)

The New Jersey Supreme Court did not establish permanency as
the "key" or sole prerequisite for an award of future benefits.
Defendants are correct that the Cipala court itself recognized
anticipatory breach as a prerequisite for such an award.  (Defs.
Opp'n Br. at 5-6; Defs. Sanctions Br. at 24-27.)  The court
expressly referred to "total anticipatory breach," "renunciation,"
"breach of the total contract," and "an absolute breach of the
contract."  Id. at 1073.  On the other hand, Hage seems to rely

on these references to contend that "Cipala teaches that a breach
is a breach, necessarily 'anticipatory' if it encompasses future
performance; and the nature and extent of damages are the issues."
(Pl. Letter Reply Br. at 4.)  In other words, "'anticipatory' can
be used as an adjective and is synonymous . . . with a breach
involving future performance."  (Id.)  But his theory appears
unsupported by the relevant case law, starting with Cipala itself.

     The New Jersey Supreme Court has not equated an "anticipatory
breach" with any breach of a contract involving future
performance.  In fact, the existence of an anticipatory breach was
not really at issue in Cipala.  The jury found that the employer
breached its promise in the employment contract to include the
plaintiff in the disability plan.  Cipala, 843 A.2d at 1071.  The
New Jersey Supreme Court further noted in its trust discussion
that "plaintiff could no longer be included under defendant's
disability insurance plan" and her employer "could not obtain
other similar third-party coverage to satisfy plaintiff's
disability claim." Id. at 1074.  Cipala merely held that, because
the plaintiff would no longer be entitled to disability benefits
if she recovered or died, she was also required to establish that
her injury was permanent in order to recover future benefits in a
lump sum payment.  In other words, proof of permanency
constitutes a further prerequisite for a lump sum award of future
benefits in addition to proof of anticipatory breach.

The New Jersey Appellate Division's own ruling in <u>Cipala</u>
provides further support for this reading of the New Jersey
Supreme Court's decision.  <u>Cipala v. Lincoln Tech. Inst.</u>, 806
A.2d 820 (N.J. App. Div. 2002).  Repeatedly referring to the
notion of anticipatory breach, the Appellate Division actually
provided a definition of the concept:

> A breach of that nature occurs when a party renounces
> or repudiates a contract by unequivocally indicating
> that it will not perform when performance is due.  It
> gives rise to a claim for specific performance or for
> damages for total breach; i.e., for damages based on
> the injured party's remaining rights to performance
> under the contract.

<u>Id.</u> at 823 (citing <u>Stopford v. Boonton Molding Co.</u>, 265 A.2d 657,
667 (N.J. 1970)).  The Appellate Division then stated that the
employer's "denial of plaintiff's opportunity to successfully
apply for benefits when she became disabled and while the
disability continued was an anticipatory breach of the employment
contract."  <u>Id.</u>  But, as the New Jersey Supreme Court itself, the
Appellate Division required the plaintiff to show <u>more</u> than a
mere anticipatory breach in order to recover future disability
benefits.  It accordingly held "that the <u>anticipatory</u> <u>breach</u> of a
disability contract will support a claim for the present value of
the future payments called for only when the employee has proven
a <u>permanent</u> <u>inability</u> to work."  <u>Id.</u> at 825 (emphasis added).

Other case law confirms the continuing viability of the
anticipatory breach doctrine under New Jersey law.  In <u>Cipala</u>,

24

both the Appellate Division and the New Jersey Supreme Court
addressed Stopford v. Boonton Molding Co., 265 A.2d 657 (N.J.
1970), and Pierce v. Tennessee Coal, Iron & Railroad Co., 173
U.S. 1 (1899).  In Stopford, the New Jersey Supreme Court allowed
a lump sum award in the form of an annuity where the employer
terminated the pension plan even though the retired plaintiff
already possessed a vested right to a lifetime pension.  Stopford,
265 A.2d at 659-64, 666-69.  According to the Stopford court,
"[w]hen defendant-company terminated the pension plan and advised
plaintiff that he would receive no further retirement benefits,
its action amounted to a renunciation – a total anticipatory
breach of its agreement to pay plaintiff $296.17 monthly during
his lifetime."  Id.  In Pierce, the United States Supreme Court
considered under federal common law the issue of a lump sum award
where the defendant breached its settlement agreement to pay
wages to its injured employee so long as he remained disabled.
Pierce, 173 U.S. at 7-17.  The Court noted that the plaintiff
presented evidence showing his permanent disability and
demonstrating "that the defendant, without any reasonable ground
therefor, denied its obligation to pay the plaintiff the
stipulated wages longer than suited its pleasure and, for six
months before the commencement of the action, disregarded the
contract, . . . and dismissed the plaintiff from its service."
Id. at 15.  Because of the "absolute" or "total" breach of the

"entire" contract, the plaintiff was able to treat the whole contract as "absolutely and finally broken by the defendant" and obtain his future benefits.  Id. at 16.

Given that the New Jersey courts have shown a willingness to consider federal common law decisions in this context, the United States Supreme Court's ruling in Mobley v. New York Life Ins. Co., 295 U.S. 632 (1935), appears especially relevant in the present circumstances.  The plaintiff alleged that the insurer committed an anticipatory breach of disability policies and sought the present value of his future benefits.  Id. at 633-34. The Supreme Court, however, upheld the directed verdicts in favor of the insurer based on the anticipatory breach doctrine, which it assumed "is applicable to the class of cases to which this one belongs."  Id. at 639. It provided the following definition of anticipatory breach:

> Repudiation by one party, to be sufficient in any case to entitle the other to treat the contract as absolutely and finally broken and to recover damages as upon total breach, must at least amount to an unqualified refusal, or declaration of inability, substantially to perform according to the terms of his obligation.  Mere refusal, upon mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy.

Id. at 638 (citations omitted).  Applying this standard, the Court in Mobley concluded that the insurer did not repudiate the policies themselves.  Id. at 638-39.  The insurer instead

26

attempted to keep the policies in force and further maintained the good faith position that the plaintiff was not disabled before eventually deciding that he was actually disabled for purposes of the policies.  Id.

Defendants further cite to the district court ruling in Lauro v. Metropolitan Life Ins. Co., 80 F.Supp. 377 (D.N.J. 1948), to support their contention that New Jersey law requires an anticipatory breach as a prerequisite for a lump sum award of future insurance benefits.  (Defs. Omnibus Mot. In Limine at 13; Defs Opp'n Br. at 6-7; Defs. Sanctions Br. at 27-28.)  The plaintiff in Lauro brought a diversity action against his insurer, expressly alleging, among other things, an anticipatory breach of a disability policy and seeking an award of future benefits.  Id. at 377-78.  Granting the defendant's motion to dismiss, the court agreed that plaintiff's argumentative allegations of anticipatory breach, intentional abandonment, repudiation, and revocation were unsupported by any underlying factual assertions and therefore insufficient.  Id. at 378.  On the contrary, it appeared that the insurer merely believed that the plaintiff was not disabled for purposes of the policy and otherwise continued the policy itself in full force and effect on a premium-paying basis.  Id.  Also, the insurer was evidently functioning within the terms of the policy itself by requiring medical examinations.  Id.

27

Hage claims that "Lauro is rendered worthless as authority
for anything in this case by the fact that the Court dismissed
the complaint on the grounds that:  a) the complaint stated no
pertinent facts and is wholly argumentative; b) . . . the company
. . . cannot . . . be construed as in breach of the policy; and
c) the total amount involved . . . falls below the jurisdiction
of this Court."  (Pls. In Limine Resp. Mem. at 4.)  He further
points out that this old case was not mentioned in Cipala.  (Pl.
Letter Reply Br. at 4.)  It is true that a 1948 decision by a
federal district court on a question of state law should not be
accorded undue weight.  Nevertheless, this ruling provides
further support for the conclusion that New Jersey, as its
neighboring state, has adopted the doctrine of anticipatory
breach.  While not expressly citing the decision, the Cipala
rulings relied on the same legal principles as Lauro and then
added an additional permanency requirement.  Furthermore, the
Lauro court's rejection of the claim for almost $20,000.00 in
future benefits manifestly played a key role in its finding that
the amount in controversy requirement for diversity jurisdiction
(which was then set at $3000.00) was not satisfied.  Id.  Lauro's
understanding of the anticipatory breach doctrine has also been
cited in more recent federal court rulings applying New Jersey
law.  See Goldstein v. Equitable Life Assur. Soc'y, No. 05-4766,
2007 WL 4322962, at *4 (D.N.J. Dec. 6, 2007) ("Moreover, the
Court has previously held that a mere denial of benefits under a

policy for medical reasons was not an anticipatory breach of the entire contract, causing all potential future benefits for the life expectancy of the insured [to] become due and [owing]."); <u>Harris Methodist Fort Worth v. Sales Support Servs., Inc.</u>, No. 01-567, 2006 WL 6012871, at *5 (N.D. Tex. Sept. 26, 2006) ("Transamerica did not renounce the entire agreement, but merely denied payment of a disputed claim.  This denial did not constitute a repudiation of the policy that excused Sales Support from its obligations thereunder."  (footnote omitted)).

The foregoing discussion clearly indicates that New Jersey continues to apply the anticipatory breach doctrine.[5]  Applying this doctrine to the present circumstances, the Court must agree with Defendants that Hage cannot establish an anticipatory breach of the Policy.

---

[5]   In fact, the Appellate Division has applied the doctrine in two recent unpublished decisions, which both expressly cited the <u>Cipala</u> decision.  In <u>Mill Creek Mall, LLC v. Fabco Shoes Mill Creek, LLC</u>, 2007 WL 4481416 (N.J. App. Div. Dec. 26, 2007), the Appellate Division found the existence of a factual dispute with respect to whether a tenant committed an anticipatory breach that allowed the landlord to treat the contract as terminated.  <u>Id.</u> at *7.  In <u>Smith v. Life Partners, Inc.</u>, 2007 WL 2847400 (N.J. App. Div. Oct. 3, 2007), the Appellate Division considered whether defendants anticipatorily breached an agreement to pay the HIV-positive plaintiff's insurance premiums in connection with defendants' purchase of her life insurance policy.  <u>Id.</u> at *1-*6, *8-*9.  It upheld the trial court's finding of an anticipatory breach.  <u>Id.</u> at *8-*9.  Both decisions also appeared to provide the essentially same definition of anticipatory breach previously adopted in such cases as <u>Cipala</u> and <u>Stopford</u>.  <u>See</u> <u>Mill Creek Mall, LLC</u>, 2007 WL 4481416, at *7; <u>Smith</u>, 2007 WL 2847400, at *8.

As Defendants point out, the First Amended Complaint lacked
any express allegations with respect to anticipatory breach.
(Defs. Omnibus Mot. In Limine at 13; Defs. Opp'n Br. at 7; Defs.
Sanctions Br. at 26-27.)  In prior case law, the plaintiff
expressly alleged a cause of action for anticipatory breach of
the contract and future benefits.  See Lauro, 80 F.Supp. at 378;
Stopford, 265 A.2d at 659, 663.  While Hage alleged that
Defendants breached the Policy itself and expressly sought an
order directing the payment of future disability benefits, he did
not set forth a specific claim for anticipatory breach or even
refer to the concepts underlying the doctrine itself.  (See First
Am. Compl. at 15-17, 27.)

More importantly, there is no indication in the record that
Hage could establish an anticipatory breach at trial.  Defendants
point out that the Policy has remained in effect to the present.
(Defs. Omnibus Mot. In Limine, at 14; Defs. Opp'n Br. at 7; Defs.
Sanctions Br. at 26-27.)  This Policy in turn does not provide
for any lump sum payment of future "Total Disability" benefits,
instead specifying that such benefits would be paid periodically
so long as he remained totally disabled and submitted continuing
proof of loss.  (Policy at Parts 2.1, 9.6.)  Although it stopped
paying his benefits (PTO at 5), it appears that Paul Revere did
not terminate the underlying agreement itself.  An anticipatory
breach does not occur merely where an insurer refuses to pay a
monthly benefit because of "mistake or misunderstanding as to

matters of fact or upon an erroneous construction of the disability clause." Mobley, 295 U.S. at 638.  In fact, it is undisputed that Paul Revere even offered to evaluate Hage under the "Residual Disability" component of the Policy.  (Defs. Opp'n Br. at 7; Defs. Sanctions Br. at 24, 27.)

The current case therefore differs significantly from Cipala, where the employer failed to include the plaintiff in the disability plan at the outset and the now-injured plaintiff could no longer be added to any insurance plan.  Cipala, 843 A.2d at 1070-71, 1074.  This Court also is not confronted with an employer's out-right termination of a pension plan, Stopford, 265 A.2d at 659-64, 666-69, or an employer who denied its obligation to pay wages to a permanently disabled employee without any reasonable ground and even dismissed the plaintiff from its service, Pierce, 173 U.S. at 15-16.  In the end, there appears to be no basis to find that Defendants "renounc[ed] or repudiat[ed] a contract by unequivocally indicating that [they] will not perform when performance is due." Cipala, 806 A.2d at 823 (citing Stopford, 265 A.2d at 667).

In addition, Hage does not contest Defendants' repeated assertion that he has continued to pay the Policy insurance premiums.  (Defs. Omnibus Mem. In Limine at 14; Defs. Opp'n Br. at 7; Defs. Sanctions Br. at 24, 27.)  It therefore appears that, even if an anticipatory breach had in fact occurred, Hage elected to continue with the contract instead of treating the breach as a

31

total repudiation.  See, e.g., Pierce, 173 U.S. at 16; Stopford, 265 A.2d at 188.[6]

The Court must conclude that, under New Jersey law, Hage has not shown an anticipatory breach of the Policy and therefore should be precluded from either interjecting evidence of future benefits and permanency of injury or disability or seeking a lump sum award for future insurance benefits.  Accordingly, the testimony of Calenda regarding permanency and of Rosamilia regarding the present value of future insurance benefits must be barred from Phase One of the trial on relevancy grounds.

Nevertheless, this ruling has its limits.  We express no opinion at this time regarding the admissibility of any other aspect of the proposed testimony of Calenda (e.g., an explanation of stereopsis and how it prevents Hage from practicing obstetrics and gynecology) and Rosamilia (e.g., the present value of Hage's unpaid insurance benefits).  Defendants also acknowledged at the hearing that Hage, if he should prevail on his contractual claim, would be entitled to a declaration that he would continue to

---

[6]  The Court accordingly rejects Hage's conclusory and unsupported assertion, made in a footnote in the memorandum of law in support of his in limine motion, that "fram[ing] this 'renunciation' doctrine for trial would require a recasting of the pleadings and specifically directed, perhaps extensive, discovery."  (Pl. In Limine Mem. at 4 n.4.)  Simply put, there is no real indication in the already-extensive factual record that Defendants repudiated or renounced the Policy itself, and there also is no reason to believe that even more discovery would alter this essential fact.

receive insurance benefits for the remainder of his life so long as he remained "Totally Disabled" under the Policy.  See, e.g., Cipala, 843 A.2d at 1071 ("Defendant argued that plaintiff was entitled only to a judgment for specific performance of the obligation to pay future benefits.").  Finally, the Court expresses no opinion at this time as to the availability of future damages in any "extra-contractual" phase of the trial.  See, e.g., Mobley, 295 U.S. at 638 (noting existence of good faith on part of insurer).

## CONCLUSION

The Court:  (1) finds that New Jersey law applies to this current matter due to the absence of an actual conflict between the laws of New York and New Jersey as to the interpretation of the Policy and the related issue of whether a plaintiff may recover a lump sum award for future insurance benefits; (2) bars Hage from presenting evidence in support of his claim for a lump sum award of future insurance benefits; and (3) specifically finds inadmissible Calenda's proposed testimony concerning the permanency of Hage's disability as well as the proposed testimony of Rosamilia regarding the present value of future insurance benefits.  The Court will issue an appropriate order.

    s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    December 24, 2008